[Civ. No. 20572.   Second Dist., Div. One.   Mar. 14, 1955.]

MYRTLE G. CATON, Appellant, v. LA DEAN CATON, Respondent.

J. F. Malouf and Glen D. Lucas for Appellant.

Donald J. MacCalman for Respondent.

WHITE, P. J.—On a default hearing, plaintiff obtained an interlocutory judgment of divorce from defendant, December 15, 1953. Defendant's default was entered October 27, 1953. Plaintiff appeals from the order made April 21, 1954, as follows: "Defendant's motion to set aside default comes on for hearing and is granted after argument by counsel and consideration by the court of the exhibits heretofore introduced at time of trial. Pursuant to stipulation, the answer heretofore served and filed may be deemed the answer herein."

The date of separation is set forth in the complaint as October 9, 1953, and is not denied by the proposed answer. The two affidavits of service show that a copy of summons, complaint and order to show cause and affidavit were delivered to and left with defendant personally on October 9, 1953, by Glen D. Lucas, plaintiff's attorney. It is averred by defendant in his affidavit that "on or about October 10th, 1953, in the City of Long Beach, State of California, defendant was handed some papers by a person unknown to him and in the presence of the plaintiff herein; that as soon as he had received the said papers in his hand, the plaintiff seized the said papers tore the same from his grasp, at the same time stating in words to the effect that the said papers were hers and that she would take care of them, and that they constituted a club which she could hold over him in

event of future possible differences between them, and that she continued to keep said papers in her possession and has at no time allowed defendant to learn the contents thereof; . . . " He avers further "that shortly after the said 10th of October, 1953, the plaintiff herein did order defendant from the abode of the parties hereto and from the business conducted by the plaintiff and defendant . . . that the defendant did leave the abode of the parties and the said business and did temporarily move to the home of his sister in the City of Santa Ana, California; that he did thereafter from time to time communicate with the plaintiff by telephone, but that she did at no time state or in any manner indicate to him that divorce litigation was then pending between plaintiff and defendant; . . ."

Assuming the truth of respondent's statement that "plaintiff seized the papers tore the same from his grasp," and completely ignoring the plaintiff's denials and her more believable account of the incident and the affidavit of plaintiff's attorney, still nowhere has defendant averred that he made any investigation or inquiry, or that he asked the plaintiff what the papers were or requested her to return them to him. He does not explain what he thought the papers contained or why he did not "know or suspect the character of the said papers" until March, 1954.

The order to show cause was set for hearing October 13, 1953. The exhibits mentioned in the order from which this appeal was taken were put in evidence at the trial on December 15, 1953. They were a telegram and a letter, dated October 12 and 23, respectively, sent from Chicago by defendant to plaintiff. In the telegram, he said "everything is yours." In the letter he repeats "everything is yours" and adds "I want nothing." In the letter he also wrote, "If and when you care to let me know you got a divorce just send it to me care of Gen. Del. Santa Ana, California. They will forward it to me in Chic." He further stated in the letter, "You know I never ask for anything. I had to take it. I would off been a fool to leave Broke, for shure and I never left you Broke either. The hole place is and always was yours and all you can get out of it . . ."

In plaintiff's complaint it is alleged that "the community property of the parties hereto consists of One Thousand Dollars ($1,000) cash, withdrawn from the joint bank account of the parties hereto, by the defendant, within thirty (30) days prior to the filing of this Complaint." This allegation

of the complaint is not denied, although by his proposed answer defendant denies the next paragraph of the complaint which sets out plaintiff's separate property and ''affirmatively states'' that the property therein described is community property of plaintiff and defendant.

At the hearing of the motion to vacate the judgment, defendant's attorney, in an attempt to explain the telegram and letter sent by his client a few days after he had been served with the summons, complaint and order to show cause, stated to the Court, ''It is admitted that the defendant had considered the matter of divorce at previous times and had discussed the matter of divorce prior to this action by the wife. . . . The fact that there was a difference between the parties is not denied. . . . He had gone into the matter prior to this and had consulted someone in connection with a possible action before this took place. . . .''

At the close of the hearing, the court said: ''I certainly do not think that the defendant has shown great diligence in protecting his own rights in this case. However, in view of the fact that this is a divorce case and the policy of the Courts as set forth in regards to that type of case, I will grant the motion.''

''The court may, upon such terms as may be just, relieve a party . . . from a judgment, . . . against him through his mistake, inadvertence, surprise or excusable neglect.'' (Code Civ. Proc., § 473.)

Respondent, in his brief, states the law as follows: ''In a divorce case, a default judgment will be set aside on slight showing because the State is also an interested party (*Rehfuss* v. *Rehfuss,* 169 Cal. 86 at 92 [145 P. 1020]), also because default divorce judgments are not favored and the Courts are alert to detect fraud therein (*Aldrich* v. *Aldrich,* 203 Cal. 433 at 437-8 [264 P. 754]). Much weight is to be given to the fact that the one seeking to set aside a default judgment of divorce was at no time represented by nor had the advantage of guidance of counsel (*Garcia* v. *Garcia,* 105 Cal.App.2d 289 at 292 [233 P.2d 23]), and even where a showing under section 473 of the Code of Civil Procedure is not strong or where there is any doubt as to the setting aside of a default, such doubt should be resolved in favor of the application (*Garcia* v. *Garcia, supra,* at 291). . . . Further the statutory provision for setting aside a default judgment is remedial and any doubt as to the propriety of setting aside of default judgment under the statute should be resolved

in favor of the application, even in a case where the showing is not too strong (*Karlein* v. *Karlein*, 103 Cal.App.2d 496 at 498 [229 P.2d 831])."

In *Rehfuss* v. *Rehfuss, supra,* at page 91, it appears that the wife signed an agreement and permitted her husband to take a judgment against her by default because she feared that if she contested his action her infant child would be taken from her and its father and placed in some public institution. The court said: "This fear was engendered in her, according to her sworn statement, by the representations made to her by her husband and her own attorney. Her neglect, under the circumstances detailed in her affidavit, was excusable in law."

The record now engaging our attention on this appeal, discloses facts not in the least analogous to those considered in *Rehfuss* v. *Rehfuss, supra.* Here, there are no children; plaintiff and defendant are 50 and 60 years of age, respectively, and both have had business experience, including the operation of a café and bar; only 13 months had elapsed between the marriage and the filing of the complaint for divorce; according to plaintiff's affidavit, corroborated by the statements of defendant's attorney, defendant had previously consulted his own lawyer regarding a divorce from plaintiff; and here defendant makes no showing that he feared his wife or that any inducement offered by her prevented him from again consulting his attorney and telling him papers had been given to him "by a stranger" and "plaintiff seized the said papers tore the same from his grasp. . . ."

In *Aldrich* v. *Aldrich, supra,* the court reversed the order denying defendant's motion to set aside the default against her. The parties were married in 1886 and lived in New Hampshire from then until 1919, when the husband sent his wife to New York, and refused to permit her to return to him. He sent her $50 monthly for her support from 1919 until January, 1924. It took considerable searching through different firms of attorneys and from January to September, 1924, for defendant to learn that plaintiff had taken a divorce against her in California; and that service of the divorce papers had been made by publication upon a false affidavit that her "last known place of residence was Vermont, when plaintiff well knew that defendant was a resident of Champlain, New York . . ." At page 437 the court said: "Respondent concedes the power of the superior court to grant defendant's motion under the facts of this case, but states

that there was no abuse of discretion in denying the same.' It is true, of course, that if there is a substantial conflict in the facts presented by the affidavits the determination of the controverted facts by the trial court will not be disturbed; but from the foregoing allegations, and from other matters appearing in the record, it is apparent that there is no such condition existing here. The defendant has made positive allegations in her affidavit, showing that plaintiff committed a fraud upon the court and upon the defendant. The plaintiff has introduced nothing to controvert this. His affidavit is evasive and insincere on its face, and it is obvious from the entire record that he knew the residence of defendant and planned to have notice mailed to her at an address which was never her address during the married life of the parties." Also in *Aldrich* v. *Aldrich, supra,* "Defendant was across the continent and claims that she was hampered not only by distance, but by lack of funds."

In *Garcia* v. *Garcia,* 105 Cal.App.2d 289 [233 P.2d 23], the order denying defendant's motion to set aside a default and to vacate the judgment was reversed. Defendant's affidavit in support of her motion reveals "that at no time was she represented by counsel . . . that after service of complaint and summons upon defendant she went to the office of plaintiff's attorney . . . that she was informed by him it was unnecessary for her to engage counsel and that when the interlocutory decree of divorce would be granted she would be given at least one-half of the community property; that no one intended to take the custody of the minor child from her; that the child would remain in her custody; and plaintiff would agree to pay for the support of the child; that she had no knowledge the attorney intended to enter a decree 'until these matters had been settled'; . . . she pledged her separate security and paid off a delinquency of $850 on an indebtedness existing against the real property of the parties." At page 293, the court said: "Sound policy favors the determination of actions on their merits. While discretion is vested in the lower court in ruling upon matters under section 473, such discretion is a legal, not an arbitrary one. (*Friedrich* v. *Roland,* 95 Cal.App.2d 543, 552 [213 P.2d 423].) Having in mind the foregoing legal principles and the circumstances here appearing, it was clearly an abuse of discretion to deny the relief sought by defendant."

*Karlein* v. *Karlein,* 103 Cal.App.2d 496 [229 P.2d 831], was a divorce action in which copy of the complaint and summons

was served personally upon defendant, he failed to appear, and default judgment was taken. His motion to set it aside was denied by the trial court, and the order was reversed on appeal. His affidavit states that "he was not familiar with legal procedure, and had some difficulty with the English language," that in 1947 and again in 1949 his wife had commenced divorce proceedings which terminated by reconciliation, that he did not know the complaint had to be answered in 10 days, that he tried to get in touch with the attorney who had represented him in the other actions but had been unable to contact him; that "on January 11, 1950, he was taken into custody on a psychopathic warrant issued upon an affidavit sworn to by his wife; that he was held in Los Angeles County Hospital and in Patton State Hospital until January 27, 1950, when he was found sane by a jury and released; that at the time of the default hearing resulting in the interlocutory decree he was actually confined in the psychopathic ward of Los Angeles County Hospital, and that plaintiff well knew of his incarceration." From other affidavits it appeared that "Undoubtedly defendant was in a disturbed mental state." On appeal, at page 498, it was said: "In the circumstances here appearing a showing of excusable neglect was made, and defendant was entitled to relief from the default taken against him and from the interlocutory judgment which followed. It certainly may not be said that he was guilty of inexcusable neglect."

From the foregoing review of the cases relied upon by respondent, it appears that the "excusable neglect" which supported the respective orders setting aside the defaults consisted of failure to defend because of (1) threats by plaintiff and his attorney to have defendant's baby put in a public institution; (2) complete ignorance of pendency of any action resulting from plaintiff's fraudulent affidavit for publication of summons; (3) erroneous advice and promises given to defendant by plaintiff's attorney; and (4) incarceration in a mental hospital.

None of the cited cases is authority for the decision in the instant action that defendant's conduct was "excusable neglect." In the instant action, copy of summons, complaint and order to show cause were delivered to defendant in Long Beach, California, on October 9th. The order to show cause required his attendance in court in Long Beach on the 13th. On the 12th he telegraphed plaintiff from Chicago and on the 23d he wrote her a letter from there saying, "If and

when you care to let me know you got a divorce just send it to me . . ." This defendant had within the past few weeks consulted his lawyer about a divorce from plaintiff and there is no showing that he was not properly advised.

An order granting defendant's motion to vacate a judgment taken against him by default was reversed on appeal in *Elms* v. *Elms,* 72 Cal.App.2d 508 [164 P.2d 936], where defendant had filed a consent that the matter might be heard as a default, before the trial he telegraphed the court requesting a continuance and permission to file a cross-complaint, and a copy of the complaint was not received by him until four days after judgment. ■ There the court stated the law applicable on the instant appeal as follows: "The doctrine that the granting of relief under section 473 is primarily committed to the discretion of the trial court does not mean that the notion, caprice or inordinate disregard of the opposing evidence should be allowed to control. Such decision must be rooted in a sound discretion, based upon a fair consideration of the total evidence and grounded upon principles of justice and fair dealing. It is not a mental discretion but an impartial discretion guided by fixed legal principles 'to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice.' (*Brill* v. *Fox,* 211 Cal. 739, 743 [297 P. 25] ; *Bailey* v. *Taaffe,* 29 Cal. 422, 424.) ■ The burden of proving excusable neglect is upon the defendant who must establish his thesis by a preponderance of the evidence. (*Bruskey* v. *Bruskey,* 4 Cal.App.2d 472, 479 [41 P.2d 203].) If from a scrutiny of all of the evidence in a proceeding under section 473 to vacate a judgment of annulment it is clear that the court abused its discretion in holding that there was excusable neglect on the part of the defendant, the order must be reversed. (*Essig* v. *Seaman,* 89 Cal.App. 295 [264 P. 552].) Where a defendant is possessed of his normal faculties and is capable of entering into contracts and transacting business, he must conform with and be guided by the rules of legal procedure in the conduct of a lawsuit as well as controlled by legal principles in his daily relations with his fellowmen. (*Gillingham* v. *Lawrence,* 11 Cal.App. 231, 233 [104 P. 584].)" (*Elms* v. *Elms, supra,* page 519.) See also *Benjamin* v. *Dalmo Mfg. Co.,* 31 Cal.2d 523, 526 [190 P.2d 593].

■ In the light of the foregoing statement of the law, the order from which the instant appeal was taken was clearly an abuse of discretion. Admittedly, defendant knew legal papers

had been personally delivered to him in Long Beach, California; he resided in Long Beach and had already consulted an attorney there regarding a divorce from plaintiff; he left the papers in Long Beach and went to Chicago without consulting his attorney or making any effort whatever to protect his interests or to take advantage of the day in court to which he was entitled; and then he wrote to plaintiff from Chicago requesting that she let him know when she got a divorce. Such careless and indifferent conduct is not "excusable neglect." Nor has defendant shown any mistake, surprise, or inadvertence on his part.

The order is reversed.

Doran, J., and Drapeau, J., concurred.