[Civ. No. 323.    Fifth Dist.    Feb. 28, 1964.]

BARBARA PRICE et al., Plaintiffs and Respondents, v. W. R. HIBBS, Defendant and Appellant.

Oren, McCartney & Sells and Donald E. Oren for Defendant and Appellant.

Griswold & Barrett and Stephen P. Galvin for Plaintiffs and Respondents.

CONLEY, P. J.—This is an appeal from a default judgment for $38,392.53 besides interest and costs. The complaint is based upon the theory that pursuant to a conspiracy between the appellant Hibbs and one Albert R. Manhan, followed by a concerted series of wrongful acts, a corporation engaged in the general merchandise business was rendered insolvent, with the consequence that its corporate stock which was held as security pursuant to contract by the plaintiffs, became worthless. The defendant Hibbs was served with sum-

mons in Ventura County; as he did not file an appearance within 30 days, the plaintiffs had a default entered against him by the clerk. Thereafter appellant's attorneys made a motion for relief from the default pursuant to section 473 of the Code of Civil Procedure; after due presentation and argument, the motion was denied. Later, counsel for defendant moved the court "...for an order dismissing this action for lack of jurisdiction ..." this motion was also denied, and thereafter a judgment by default was entered.

Appellant contends:

(1) That the court erred in refusing to grant his motion to set aside the default;

(2) That the judgment is void because the complaint does not state facts sufficient to constitute a cause of action;

(3) That the complaint is fatally defective because it fails to include the receiver in bankruptcy of the corporation as a party defendant; and

(4) That no personal representative of the estate of Mrs. B. B. McGinnis was made a party to the action.

*The Denial of the Motion to Set Aside the Default Was Within the Trial Court's Discretion and the Ruling Cannot Be Disturbed.*

The first contention made by the appellant is that the court erred in denying his motion to set aside the clerk's default and permit a trial on the merits. This motion was heard and ruled upon by Judge Donald R. Fretz. ■ As no appeal may be taken directly from such an order (Code Civ. Proc., § 963), its propriety may be determined on a consideration of the appeal from the judgment entered after the ruling was made. (*Barry* v. *Rodgers,* 199 Cal.App.2d 298, 301 [18 Cal. Rptr. 723].)

The evidentiary data upon which Judge Fretz ruled included the documents in the case file and declarations by the defendant and one of his attorneys, and by one of counsel for the plaintiffs. The complaint was filed on March 13, 1963; on March 20, 1963, the summons and a copy of the summons and complaint were sent to the marshal of the Municipal Court for the Ventura Judicial District, by plaintiffs' counsel. On March 22, 1963, the letter enclosing the papers for service was received by him, and the marshal's certificate shows that the defendant was personally served in Ventura County on March 25 (that day being a Monday). If service was in fact then completed, the 30-day period for the filing of an appearance ended on April 24, 1963, and the defendant was

in default on April 25; on that date, pursuant to a request made by counsel for the plaintiffs, the clerk of the court entered the default of the defendant. Appellant's attorneys received a copy of the summons and complaint by mail from Mr. Hibbs at their Fresno offices on May 2, 1963. On May 28, 1963, a notice of motion to vacate the default was filed by them in the county clerk's office at Merced, supported by a proposed demurrer and answer to the complaint, and by two declarations, one by the defendant and one by Robert T. McCartney, one of his attorneys.

Mr. McCartney's declaration recites that the appellant stated in the letter in which he forwarded the copy of the complaint and summons, that he had been served "...about three weeks previously..." but he could not give the exact date; that counsel promptly called the offices of the attorneys for the plaintiffs in Merced and was then informed that the default had been entered during the previous week; that on May 16 he met with Mr. Hibbs, who confirmed what he had said in his letter about the time of service. Mr. McCartney points out that if Mr. Hibbs was correct as to the time of service, his appearance could have been made within a week after May 1. The declaration continues: "I have discussed the facts in detail with Mr. Hibbs and believe that if he is mistaken about the date of service, then his mistake was excusable and that his default should be set aside and that he should be permitted to file an answer." The attorney states further that he was currently representing Mr. Hibbs in the proceeding entitled *In the Matter of B. B. McGinnis Co., a corporation,* numbered 13556, in the United States District Court for the Southern District of California, and that he has advised Mr. Hibbs that in his opinion the true facts constitute a full, complete and valid defense on the merits to all claims stated in the complaint.

The declaration of Mr. Hibbs establishes that his residence is in Ventura where he operates two separate businesses; he continues: "... on March 22, 1963, I returned to my place of business after being away therefrom and upon my return learned that a Marshall or Constable named John Proby, whom I know personally, had been in to see me and to make service upon me of Complaint and Summons in the above entitled matter and that he had departed without leaving any copy of Summons or Complaint since I was not present.

"Thereafter and on Monday, April 1, 1963, I was in Los Angeles on business with John E. Johannesson who is the

manager of my clothing business in Ventura. While we were in Los Angeles Mr. Johannesson asked me if I had yet been served with Summons and Complaint in said action. At that time I believed that I had not been served and I believe now that I had not then been served. I answered to Mr. Johannesson that, 'No, I have not been served.' ''

Mr. Hibbs states that he remembers that he was taking a long-distance call on the day the actual service of the papers was made upon him; that he thinks that it was a Monday and that the date was either April 8, April 15, or April 22.

He further says: ''If Summons and Complaint were served on me at any time other than April 8, April 15 or April 22, then I am mistaken about the date of service but I do not believe that I am so mistaken and I believe that service could only have been made on one of these three days and not prior to April 8, 1963. Mr. Pino, Mr. Zalusky and Maureen Thompson [employees in his Ventura store] all believe that service could only have been made on April 22. They have so informed me.

''If Summons and Complaint were served on me at any time prior to April 8, 1963, and if default was properly entered herein, then my failure to send Summons and Complaint to my attorney for the filing by him of an appearance on my behalf was due to my mistaken belief that Summons and Complaint could not have been served on me prior to April 8, 1963, and that my attorney would have at least a week after receipt of Summons and Complaint in which to file my appearance. I do not believe that I was so mistaken but in the event that I was, I believe that this mistake was excusable and was consistent with due care under all of the circumstances, or that any neglect in sending Summons and Complaint at the time it was sent to my attorney was excusable.''

Stephen P. Galvin, one of the attorneys for the plaintiffs, filed a declaration resisting the motion to vacate the default, stating that on March 20, 1963, he sent by mail to the marshal at Ventura the necessary documents with instructions to serve the defendant, and a check to cover his services; that on the 27th day of March, 1963, he received by mail from the marshal the original summons with return, together with a check in the sum of $1.70, representing the difference between the advance above mentioned and the actual cost of service; that the return made by the marshal showed service upon Mr. Hibbs on the 25th day of March, 1963.

As respondents point out, the marshal's return upon the original of the summons was prima facie evidence of the facts stated in it (Gov. Code, §§ 26662, 71265); it was his duty to serve the process (Gov. Code, § 26608) and certify the manner and time of service (Gov. Code, § 26609); presumably these official duties were properly performed. (Code Civ. Proc., § 1963, subd. 15.)

Appellant's personal declaration concedes that the marshal was in possession of the process in question, on March 22, 1963, since his office attempted to serve appellant on that date; this confirms the statement in the marshal's certificate that he received the summons on March 22, 1963. Appellant feels sure that he must have been served on a Monday. The first Monday after March 22 was March 25; appellant does not purport to state where he was on that date, although he suggests three Mondays thereafter one of which was the day upon which service could have been accomplished.

The law applicable to this situation is concisely and forcefully stated in the opinion written by Mr. Justice Peters in *Luz* v. *Lopes,* 55 Cal.2d 54, 61-62 [10 Cal.Rptr. 161, 358 P. 2d 289] : "... the trial court was justified in denying the motion made under section 473 of the Code of Civil Procedure for relief from default. While this section is remedial and to be liberally construed (*Beckley* v. *Reclamation Board,* 48 Cal. 2d 710 [312 P.2d 1098]; *Frank E. Beckett Co.* v. *Bobbitt,* 180 Cal.App.2d Supp. 921 [4 Cal.Rptr. 833]; *Estate of Nelson,* 127 Cal.App.2d 732 [274 P.2d 432]) the moving party must show 'mistake, inadvertence, surprise or excusable neglect.' As was said in *Elms* v. *Elms,* 72 Cal.App.2d 508, 513 [164 P.2d 936] : 'It is the duty of every party desiring to resist an action or to participate in a judicial proceeding to take timely and adequate steps to retain counsel or to act in his own person to avoid an undesirable judgment. Unless in arranging for his defense he shows that he has exercised such reasonable diligence as a man of ordinary prudence usually bestows upon important business his motion for relief under section 473 will be denied ....Courts neither act as guardian for incompetent parties nor for those who are grossly careless of their own affairs.' The burden of proof on such a motion is on the moving party who must establish his position by a preponderance of the evidence. (*Etchepare* v. *Ehmke,* 137 Cal.App.2d 508 [290 P.2d 374]; *Bruskey* v. *Bruskey,* 4 Cal. App.2d 472 [41 P.2d 203]; *Caton* v. *Caton,* 131 Cal.App.2d 451 [280 P.2d 876].) It is for the trial court to determine all

conflicts in the testimony or affidavits (*Husar* v. *Husar,* 48 Cal.App.2d 326 [119 P.2d 798]; *Penland* v. *Goodman,* 44 Cal.App.2d 14 [111 P.2d 913]) and if there is a conflict the determination of the trial court is conclusive on appeal (*Jones* v. *Lindsey,* 114 Cal.App.2d 237 [250 P.2d 153]; see also *Morgan* v. *Brothers of the C. Schools,* 34 Cal.App.2d 14 [92 P.2d 925]; *Sheffler* v. *Hutchings,* 124 Cal.App. 760 [13 P.2d 527]; *Taranto* v. *Dick,* 119 Cal.App. 161 [6 P.2d 334]; *Beard* v. *Beard,* 16 Cal.2d 645 [107 P.2d 385]; *Rackov* v. *Rackov,* 164 Cal.App.2d 566 [330 P.2d 926])."

Similarly, in *Yarbrough* v. *Yarbrough,* 144 Cal.App.2d 610, 614-615 [301 P.2d 426], it is said: ". . . that the granting or denying a motion to vacate a default rests in the sound discretion of the trial court, and that the order will not be disturbed unless an abuse of discretion clearly appears. (See for good statements of the rule *Baratti* v. *Baratti,* 109 Cal. App.2d 917 [242 P.2d 22]; *Berry* v. *Berry,* 140 Cal.App.2d 50 [294 P.2d 757]; *Wilterdink* v. *Wilterdink,* 81 Cal.App.2d 526 [184 P.2d 527]; *Shearman* v. *Jorgensen,* 106 Cal.483 [39 P. 863].) . . . The burden of showing that the default was entered through mistake, inadvertence, surprise or excusable neglect is on the moving party, and in the absence of such a showing the default may not be set aside." (See also *Pickerill* v. *Strain,* 196 Cal. 683, 685 [239 P. 323]; *Gudarov* v. *Hadjieff,* 38 Cal.2d 412, 418 [240 P.2d 621]; *MacKinnis* v. *McHugh,* 128 Cal.App.2d 774, 776 [276 P.2d 51]; *A & S Air Conditioning* v. *John J. Moore Co.,* 184 Cal.App.2d 617, 619-620 [7 Cal.Rptr. 592]; *Galper* v. *Galper,* 162 Cal.App.2d 391, 396 [328 P.2d 487]; *Hummel* v. *Hummel,* 161 Cal. App.2d 272, 276 [326 P.2d 542]; *Beard* v. *Beard,* 16 Cal.2d 645, 647 [107 P.2d 385].)

All intendments are in favor of the correctness of the judgment, and where there is a conflict in the evidence or in the inferences to be drawn therefrom, an appellate court is bound to accept as true the evidence and inferences in accord with the finding of the lower court. (*Kooper* v. *King,* 195 Cal.App.2d 621, 625-626 [15 Cal.Rptr. 848]; *Warren* v. *Warren,* 120 Cal.App.2d 396, 400 [261 P.2d 309]; *Kapple* v. *Kapple,* 140 Cal.App.2d 787, 788 [295 P.2d 932]; *Rackov* v. *Rackov,* 164 Cal.App.2d 566, 569 [330 P.2d 926]; *Romer, O'Connor & Co.* v. *Huffman,* 171 Cal.App.2d 342, 347 [341 P.2d 62].)

The trial court's order involves two aspects. The first is the question of fact as to when the defendant was actually served with process. ■ On the one hand is the official return of

the peace officer stating that service was completed on March 25, 1963; this positive showing is supported by corroborating circumstances. On the other hand is the uncertain affidavit of Mr. Hibbs saying he does not know just when he was served but he thinks it was on a later date. The court had ample evidence to justify its implied finding that the service was effected on the date shown in the return of the marshal. That being so, there is no question that the entry of the default by the clerk at the request of respondents' counsel was in accordance with law.

The second aspect of the trial court's ruling involves the question whether, the facts being as impliedly found, the court abused its discretion in upholding the strict letter of the law with respect to the default. In *Elms* v. *Elms, supra,* 72 Cal.App.2d 508, 513, it is said: "One may not be relieved from his default unless he makes a showing that he has acted in good faith and demonstrates that his excusable neglect was the actual cause of his failure to attend the trial. Neither one's change of mind nor his inexcusable negligence is ground for vacating a judgment. To warrant relief under section 473 a litigant's neglect must have been such as might have been the act of a reasonably prudent person under the same circumstances. The inadvertence contemplated by the statute does not mean mere inadvertence in the abstract. If it is wholly inexcusable it does not justify relief. (Freeman on Judgments, 5th ed., vol. 1, p. 482; *Shearman* v. *Jorgensen,* 106 Cal. 483, 485 [39 P. 863].) . . . The law frowns upon setting aside default judgments resulting from inexcusable neglect of the complainant. The only occasion for the application of section 473 is where a party is unexpectedly placed in a situation to his injury without fault or negligence of his own and against which ordinary prudence could not have guarded. Neither inadvertence nor neglect will warrant judicial relief unless it may reasonably be classified as of the excusable variety upon a sufficient showing. (*Hughes* v. *Wright,* 64 Cal.App.2d 897 [149 P.2d 392].) ''

The mislaying of process, forgetfulness, or intentional disregard of service are not "mistake, inadvertence, surprise or excusable neglect" as those terms are used in section 473 of the Code of Civil Procedure, and they do not require a court to set aside a default. (*Yarbrough* v. *Yarbrough, supra,* 144 Cal.App.2d 610; *Kooper* v. *King, supra,* 195 Cal.App.2d 621; *Slater* v. *Selover,* 25 Cal.App. 525 [144 P. 298]; *W. J. Wallace & Co.* v. *Growers Security Bank,* 13

Cal.App.2d 743 [57 P.2d 998]; *Nicholson* v. *Nicholson,* 85 Cal.App.2d 506, 509 [193 P.2d 112]; *Essig* v. *Seaman,* 89 Cal.App. 295 [264 P. 552]; *Caton* v. *Caton,* 131 Cal.App.2d 451 [280 P.2d 876]; 3 Witkin, California Procedure, Attack on Judgment in Trial Court, §§ 54, 55, pp. 2107-2108.)

■ Appellant, naturally enough, stresses the well known principle that the courts favor trials upon the merits, and argues strongly that the court committed error in the circumstances by permitting a judgment of almost $40,000 to stand. But even if the justices of this court, sitting as trial judges, would have exercised their discretion to set aside the default pursuant to the foregoing principle, we cannot as an appellate tribunal ignore the rules differentiating our function from that of the trial judge. The principles previously discussed, applied to the facts in the record, compel us to hold that we cannot interfere with the discretionary conclusion reached by the lower court.

### The Complaint States a Cause of Action.

The next point argued by appellant is that the judgment is void because, as he claims, the complaint does not state facts sufficient to constitute a cause of action. Counsel for the appellant concede, as they must, that the inquiry with respect to the sufficiency of the complaint should be strictly limited to the question whether the pleading fails to state a cause of action. ■ Minor mistakes in the nature of ambiguous or uncertain allegations or the omission of nonessential factors are unimportant and at this stage of the case can make no difference in the result on an appeal from a default judgment. (*Buck* v. *Morrossis,* 114 Cal.App.2d 461, 466 [250 P.2d 270]; *Lester* v. *Beer,* 74 Cal.App.2d Supp. 984, 987-988 [168 P.2d 998].)

■ Plaintiffs' complaint, designated by them as one for conspiracy and fraud, may be summarized as follows: The B. B. McGinnis Company is a corporation; before and on April 19, 1956, the company was engaging in retail merchandising at its store in Merced and had a net worth of $184,398.74; there were outstanding 128 shares of capital stock owned as follows: Mrs. B. B. McGinnis — 78, Clifford Blauert — 27, Loren Alvord — 5, Angelo Bardini — 6, Barbara Price — 12; Mrs. McGinnis is now deceased and Barbara Price (who is her daughter) has succeeded to her interest in the 78 shares; on June 1, 1956, the value of each of the 128 shares was $1,440.61; defendants Clifford Blauert and Loren Alvord are united in legal interest with plaintiffs but they re-

fuse to join as plaintiffs and consequently are named defendants.

On or before April 19, 1956, defendants W. R. Hibbs and Albert R. Manhan fraudulently conspired together to deprive the owners of the capital stock of the B. B. McGinnis Co. of the assets of said corporation, and the said Hibbs and Manhan corruptly and unlawfully conspired, combined, and agreed with each other to obtain the outstanding capital stock of the B. B. McGinnis Co. and gain control of said corporation and its assets for the purpose of cheating and defrauding plaintiffs and the other owners of capital stock of the assets of said corporation; pursuant to said conspiracy on April 19, 1956, Manhan entered into a written agreement with plaintiffs and Blauert and Alvord and the late Mrs. B. B. McGinnis for the sale to Manhan of all of their shares of stock, at a sale price of $184,398.74; the written agreement (Exhibit A attached to the complaint) provides that Manhan should maintain an inventory of goods in the store of a value equal to 120 per cent of any unpaid portion of the purchase price, should not withdraw any sums from the special time deposit of the B. B. McGinnis Co. at the Bank of America in Merced, unless ''an amount equal to said withdrawal be paid to the said bank as Escrow Holder to be applied to the purchase price of said 128 shares of capital stock of the B. B. McGinnis Co.'' and if Manhan should sell any stock in the corporation, certificates representing such stock should be issued and delivered to the Bank of America in the escrow set up for the sale of the 128 shares, and all of the corporate stock should be held in escrow as security for the full payment of the purchase price; on June 1, 1956, pursuant to the agreement, plaintiffs and the late Mrs. B. B. McGinnis and defendants Blauert and Alvord deposited in escrow with the Bank of America the outstanding 128 shares of capital stock of the company and transferred to Manhan all of the assets of the company and turned over full operation of the corporation to him; thereafter pursuant to their unlawful conspiracy, Hibbs and Manhan ''upon taking over the operation of said B. B. McGinnis Co. and obtaining possession of its assets, proceeded to use and operate said corporation as the *alter ego* of the said A. R. Manhan and W. R. Hibbs for the purpose of wrongfully converting the assets of said corporation to their own personal use and benefit, thereby destroying the value of said corporation and the value of the capital stock of said corporation which was the principal

security for the unpaid balance of the purchase price of the said 128 shares of the capital stock of the said corporation''; in the execution of the conspiracy Hibbs and Manhan did wrongful acts resulting in a depletion of the assets and the destruction of the credit and good will of the company; in violation of the express terms of the agreement, Manhan and Hibbs withdrew money from the Bank of America out of the time deposit without paying over to the escrow holder for the benefit of sellers an amount equal to the sums withdrawn, failed and neglected to maintain an inventory of merchandise equal to 120 per cent of the balance payable for the stock and sold capital stock of the company without providing that certificates representing such stock be deposited in escrow as security for the payment of the balance of the purchase price to the sellers; defendant Hibbs, who had become secretary of the corporation immediately after June 1, 1956, borrowed from the corporation sums of money for his own use and Manhan, president of the company, also borrowed from the company money for his personal use; Hibbs wrongfully discharged notes and other personal obligations owed by him to the company without the company receiving any value therefor and Hibbs and Manhan paid themselves fees and salaries out of the assets of the company which were not warranted by the income of the company or by the services rendered; Hibbs and Manhan sold capital stock of the company, but did not issue stock certificates pursuant to the provisions pertaining to the sale of stock set out in the agreement, and the company did not receive any value for the capital stock thus issued; Manhan and Hibbs in the operation of the company failed and neglected to pay obligations owed by the company to their suppliers of merchandise; as a consequence of the wrongful, improper, and unlawful operation of the company by Hibbs and Manhan pursuant to the conspiracy the company was rendered insolvent on May 16, 1962, and plaintiffs' security for the balance of the purchase price of the capital stock sold to Manhan was destroyed; there was then, and is now, due and owing on the purchase price to plaintiffs the sum of $35,767.53, and the stock has become valueless as security; Manhan, the ostensible purchaser of the stock, is in default under the agreement and he is without assets and cannot pay plaintiffs the balance due of which Barbara Price is owner of 90/128 or $33,532.68 and Angelo Bardini 6/128 or $2,234.85; Manhan is now outside of the jurisdiction of the state; as a consequence of defendant's wrongful and fraudulent manipulation of the corporate entity and the de-

pletion of its assets for his own use and benefit, the company became insolvent and the plaintiffs, as alleged preferred creditors, were made parties defendant by the general creditors of the corporation in a proceeding for arrangement in the United States District Court entitled "In the Matter of B. B. McGinnis Co."; as a consequence plaintiffs incurred costs and attorneys' fees in the sum of $1,000 and were obliged to pay $3,000 to settle all claims; plaintiffs first learned of the defendant's fraud and conspiracy on May 16, 1962, when plaintiffs were served with an order to show cause in the above proceedings in the United States District Court; in doing the things alleged in the complaint defendant acted fraudulently and with wanton disregard of plaintiffs' rights and plaintiffs ask exemplary damages of $25,000. At the hearing on default before Judge Maushart there was testimony that defendant Hibbs is now operating the McGinnis store in Merced, having purchased the assets of the corporation through the bankruptcy proceedings.

The appellant contends that the plaintiffs stated no cause of action in that essential elements of fraud were not pleaded (2 Witkin, Cal. Procedure, Pleading, § 347 et seq., p. 1325 et seq.). The argument is made that no fraudulent representation is stated in the pleading and that the allegation that there was a conspiracy adds nothing of substance (*Mox Incorporated* v. *Woods,* 202 Cal. 675 [262 P. 302]) as it is the wrongful act and not the existence of a conspiracy as such that is the basis of a right to sue. Furthermore, the appellant, citing *Lavine* v. *Jessup,* 161 Cal.App.2d 59, 70 [326 P.2d 238], argues that the mere use of "legal, generic, or other terms" does not create a cause of action and that they are no substitute for facts.

The clear answer to these contentions is that the plaintiffs are obviously not relying upon fraudulent representations; the complaint alleges that by a series of tortious acts, pursuant to a conspiracy (which in itself merely gives a right to the injured persons to hold each of the parties to the conspiracy responsible for the wrongful acts of both (*Mox Incorporated* v. *Woods, supra,* 202 Cal. 675)), the corporation was wrecked, thereby rendering worthless the stock which plaintiffs held as security for the payment of the balance due them. ■ Contract rights are protected by law and the procurement of their intentional violation through wrongful conduct is an actionable tort (*Foster* v. *Keating,* 120 Cal. App.2d 435 [261 P.2d 259]; *Fifield Manor* v. *Finston,* 54

222

Cal.2d 632, 635 [7 Cal.Rptr. 377, 354 P.2d 1073, 78 A.L.R.2d 813]; *Imperial Ice Co.* v. *Rossier,* 18 Cal.2d 33, 35 [112 P.2d 631]; 30 Am. Jur., Interference, § 42, pp. 84-85; Prosser on Torts (2d ed.) § 106, p. 720 et seq.; 86 C.J.S., Torts, § 44, p. 959 et seq.), as is the fraudulent violation of fiduciary duties by corporate officers (*Pigeon Point Ranch, Inc.* v. *Perot,* 59 Cal.2d 227 [28 Cal.Rptr. 865, 379 P.2d 321]). ▆▆ When conspiring corporate officials act tortiously and individuals are injured as a proximate result, such tortfeasors are liable to the injured persons even though the corporation may also be liable, or may also have a cause of action against, the wrongdoers. (*O'Connell* v. *Union Drilling etc. Co.,* 121 Cal. App. 302, 308-309 [8 P.2d 867]; *Booth* v. *Peoples Finance etc. Co.* 124 Cal.App. 131, 135 [12 P.2d 50]; *Thomsen* v. *Culver City Motor Co., Inc.,* 4 Cal.App.2d 639, 644 [41 P.2d 597]; *Granoff* v. *Yackle,* 196 Cal.App.2d 253 [16 Cal.Rptr. 394].) ▆▆ We conclude that the complaint states a cause of action against the defendants for their conspiratorial wrongdoing which resulted in the loss of plaintiffs' security for the balance due on the stock and in their required payment of moneys to the insolvent estate.

*The Receiver in Bankruptcy Was Not a Necessary Party*

▆▆ ▆▆ The contention of appellant that the judgment is void because the representative of the corporation was not made a party defendant cannot be upheld. The plaintiffs sue in their own right and not as stockholders. They were creditors of Manhan—not of the corporation; their interest in the stock was a security interest (Civ. Code,* §§ 2986, 2988); since respondents were not stockholders at the time of the suit, they were not authorized to bring a derivative suit nor to join the corporation as a party plaintiff (Corp. Code, § 834); respondents correctly insist that they did not sue on behalf of the corporation or its stockholders; respondents allege mismanagement of the corporation because such mismanagement destroyed their security interests; their claims are not claims of stockholders as such, but of "aggrieved pledgees."

*There Is No Defect in the Complaint Through a Failure to Join Additional Parties.*

▆▆ Lastly, appellant argues that the complaint is fatally defective because plaintiffs did not join a representative of

---

*(Civ. Code, §§ 2986-3011 repealed. Stats. 1963, ch. 819, effective Jan. 1, 1965.)

the estate of Mrs. B. B. McGinnis as a party defendant. The complaint alleges that Barbara Price, one of the plaintiffs, succeeded to the shares of stock in the corporation formerly owned by Mrs. McGinnis. There is nothing in the record to suggest that Mrs. McGinnis' estate has not been fully distributed. The pleading, although not as complete and specific as it might well have been, nevertheless alleges a fundamental fact, namely, that Barbara Price now owns the stock formerly owned by Mrs. McGinnis. We cannot assume that there has not been a distribution of the stock to her or that there was actually in existence a personal representative of the estate of Mrs. McGinnis at the time the complaint was filed.　　　It is also suggested that the complaint is defective in that it does not allege that Barbara Price succeeded to the rights of Mrs. McGinnis under the contract pledging the stock; we believe that such a result would normally follow in view of the other facts alleged in the complaint, and that this omission is a minor defect which could not possibly be held to invalidate the default judgment.

At the hearing before the trial judge, it was established that Barbara Price was the daughter and sole heir of the late Mrs. McGinnis, and also, that Mrs. McGinnis had been deceased for five years on June 18, 1963. Every intendment is in the favor of the judgment; appellant has not shown error.

The judgment is affirmed.

Brown (R.M.), J., and Stone, J., concurred.

A petition for a rehearing was denied March 26, 1964, and appellant's petition for a hearing by the Supreme Court was denied April 22, 1964.