[Civ. No. 31217. Second Dist., Div. One. June 26, 1967.]

GEORGE W. GOODSON, Plaintiff, Cross-defendant and Appellant, v. THE BOGERTS, INC., Defendant, Crosscomplainant and Respondent.

Edwin D. Hamlin for Plaintiff, Cross-defendant and Appellant.

Baker, LeBel & McNairy for Defendant, Cross-complainant and Respondent.

LILLIE, J. — On January 20, 1966, plaintiff, a mail-order vendor, filed in propria persona Complaint for Breach of Contract and for Unfair Competition against an advertising agency and two of its officers, praying for $756, $6,000 attorney's fees and $25,000 punitive damages. On February 1, 1966, defendant agency, The Bogerts, Inc. (hereinafter referred to as defendant), in addition to filing an answer, cross-complained against plaintiff for $12,192.63 for services rendered under the same contract. Plaintiff and cross-defendant having failed to answer, his default was entered and after a trial on the cross-complaint a default judgment against him in the sum of $12,192.63 was entered on March 8, 1966. Thereafter, writ of execution was issued March 30, 1966,

and garnishment levied thereunder on April 4, 1966, upon Security First National Bank and Keen Factors, the proceeds of which amounted to $7,428.64. Nothing was done in the case by plaintiff until May 1, 1966, when for the first time an attorney appeared on his behalf thereafter (May 11, 1966) filing Notice of Motion for Order Setting Aside Default . . . Vacating the Default Judgment, etc., to which was attached proposed answer to cross-complaint and declarations of plaintiff and his counsel. In his declaration plaintiff alleged that he first knew of the judgment in March 1966 when he was notified by his bank that his account had been levied on; during the first week in March 1966 he received Memorandum of Costs and Disbursements through the mail but did not understand its significance; at no time did he receive a copy of the cross-complaint through the mail or any other notice thereof, the default hearing or the judgment; and even had he received the cross-complaint he would not have known of the requirement that he file an answer thereto. Opposing the motion, defendant filed numerous declarations. On June 6, 1966, the trial court ordered the motion to set aside the default judgment against plaintiff and cross-defendant be granted as of July 6, 1966, "upon the express condition that on or before said date the cross-defendant has deposited with the Clerk of this Court the sum of $12,192.63 in cash [credit for $7,428.64 (proceeds of the execution) deposited with the court by defendant was allowed, leaving a balance of $4,763.99]. . . . In the event said sum of cash is not so deposited as of July 6, 1966, the motion is denied. . . ." Plaintiff and cross-defendant made no such deposit, but nine days before the expiration of the time allowed (June 28, 1966) filed Notice of Appeal from the order. Appellant seeks affirmance of the order with deletion therefrom of the condition.

The following was adduced through the testimony of Zepha Bogert at the trial on the cross-complaint. On August 14, 1965, the parties entered into a written contract (Exh. 6), execution of which is admitted in plaintiff's complaint. Thereunder defendant became the advertising and merchandising agency of record for plaintiff (doing business as Delta Products Company and engaged in the sale of kitchen appliance roller units) and his products; it provided that all expenditures for advertising and merchandising be approved first by plaintiff, that all space advertising and radio and television time placed by defendant be billed at the usual

rates and certain other expenses and out-of-pocket disbursements be billed to plaintiff at cost or at defendant's time charge rate, and that plaintiff pay defendant for all expenditures for advertising within 10 days of "on-sale" date (10 days after appearance of ad in advertising media). Pursuant to the terms of the contract, defendant rendered advertising services on plaintiff's account and at his request in the sum and at the agreed rate of $16,079.99, of which $6,285.36 was paid by plaintiff, leaving a balance due of $9,742.63 (ledger sheet, Exh. 7). Under the contract, John Phillips, an account executive of many years experience with defendant, rendered 98 hours of service on account of plaintiff and at his request consisting of merchandising, counselling and preparation of all types of schedules, plans and packaging, working with him in his factory and mail-order business; plaintiff was billed therefor at $25 an hour (standard rate within the industry), a total of $2,450 (list of hours, Exh. 9). Accordingly, judgment was rendered in the total amount of $12,192.63 for advertising and merchandising services.

The following was received on the motion. Plaintiff was engaged in selling kitchen appliance roller units by placing advertisements in various advertising media and receiving orders therefor by mail on a prepaid basis by those answering the ads. At the time he entered into the contract (Exh. 6) for advertising and merchandising services, plaintiff caused defendant to have confidence in his credit and character by discouraging a credit check and failing to advise it either of considerable pending litigation in which he was a party defendant[1] or certain judgments rendered against him[2]

[1] "6-15-1961 Bank of America, Case No. 811577
4-12-1963 Richard Beam, Case No. 978710
7- 9-1963 Creditors House, Case No. 001841
8-19-1963 Kafton Sales Co., Inc. Case No. 015022
6- 7-1963 Retail Credit Bureau of L. A. Case No. 992899
7-24-1963 H. Gerson (Collections). Case No. 007458
9-20-1963 Bldg. Materials Dealers Credit. Case No. 021733.
4- 9-1963 Caine & Weiner Co., Inc. Case No. 978040
1- 3-1964 M. L. Harris (Collections). Case No. 055911
10-1-1964 Guardian Credit Co. Case No. 121470
2-17-1965 Electro Cords Corp. Case No. 156977
10-4-1965 Intrastate Credit Service, Inc. Case No. 225814
11-9-1965 Bear Advertising Co., Inc. Case No. 234474
1-14-1966 Nationwide Collection Service, Case No. 255199."

[2] "(a) June 24, 1964, *Michael Flynn Co.* v. *Goodson*, $8,672.74, Case No. C-820199;
(b) February 18, 1964 (abstract of judgment), Nationwide Collection Service (Inglewood #15704), $2,079.41;
(c) December 14, 1965, Willard Container Co. (Glendale Small Claim SC 22904), $164.98."

(Declaration of Lionel B. LeBel, Jr.) ; and by pre or prompt payment for early services and materials and defendant's reliance on his credit and character, plaintiff caused it to furnish to him under the contract greater services and materials for which he then refused to pay, all the while acknowledging the amount due (Declaration of Zepha Bogert). Phillips (vice president of defendant), experienced in mail-order advertising and merchandising development, developed for plaintiff, pursuant to the contract and at his request, a program of selectively placed advertisements in various advertising media over certain periods of time, which program was submitted to and approved by plaintiff who then ordered the various advertising placed. As part of the procedure of projecting advertising from time to time, and relating said advertising to sales results, plaintiff reported as of November 29, 1965, a total gross sales of $22,357.65, generated entirely through defendant's advertising campaign; and over $66,000 in future sales was estimated solely by reason of defendant's services, amounting to an 80 percent profit to plaintiff after costs but before payment of advertising (Declaration of John Ward Phillips). As a result of services rendered under the contract on plaintiff's account, defendant placed for plaintiff over $13,400 worth of advertising through various media, 85 percent of which was billed to defendant which it had to pay because plaintiff refused to do so thereby placing defendant's business in serious financial difficulties (Declaration of Zepha Bogert).

On the matter of plaintiff's default, Frederic M. McNairy, member of a law firm representing defendant, initially handled defendant's claim ($12,192.63) against plaintiff and demanded payment from him; between December 28, 1965, and January 19, 1966, he received from plaintiff various promises to pay; plaintiff at no time denied owing any portion of the amount due, except on January 19 or 20, 1966, by telephone he voiced his concern about $200 worth of charges from the Herald-Examiner, but said, "[I] will get you the checks"; inasmuch as on January 20, 1966, plaintiff obviously did not intend to make payment but was actively preparing litigation against defendant (plaintiff having filed his complaint on that day), he saw fit to neither further rely upon any representations or stipulations of plaintiff nor contact him regarding a default on the cross-complaint when the latter was thereafter served on plaintiff; the cross-complaint was served by mail on plaintiff at the same address to which

Memorandum of Costs and Disbursements was mailed, which document plaintiff acknowledged having received; and said cross-complaint directed to plaintiff has never been returned by the Post Office to his office (Declaration of Frederic M. McNairy).

Citing established authorities that section 473, Code of Civil Procedure, is remedial and should be liberally construed so as to dispose of cases on their substantive merits, appellant argues on the one hand that this court should "scrutinize more rigidly orders denying relief" and on the other, that the order granting the motion be affirmed with deletion of the express condition and return of the $7,428.64 already deposited with the court. While admitting that the record shows that the cross-complaint was mailed to him, appellant reargues the merits of his motion entirely upon facts outside the record, such as—his "office receives thousands of letters a day which are opened by an automatic opener and sorted by clerks," "it might well be that a piece of mail such as the cross-complaint in this action might never have come to [his] desk," etc.

■ The granting or denying of a motion to vacate a default rests in the sound discretion of the trial court and the order will not be disturbed on appeal unless an abuse of discretion clearly appears. (*Price* v. *Hibbs,* 225 Cal.App.2d 209, 216 [37 Cal.Rptr. 270] ; *Yarbrough* v. *Yarbrough,* 144 Cal.App.2d 610, 614-615 [301 P.2d 426].) ■ While section 473 is remedial and should be liberally construed, nevertheless the moving party has the burden of showing that the default was entered through "mistake, inadvertence, surprise or excusable neglect" (§ 473), which he must establish by a preponderance of the evidence (*Luz* v. *Lopes,* 55 Cal.2d 54, 61-62 [10 Cal.Rptr. 161, 358 P.2d 289] ) ; in the absence of such showing the default may not be set aside. (*Yarbrough* v. *Yarbrough,* 144 Cal.App.2d 610, 614-615 [301 P.2d 426] ; *Gudarov* v. *Hadjieff,* 38 Cal.2d 412, 418 [240 P.2d 621] ; *Beard* v. *Beard,* 16 Cal.2d 645, 647 [107 P.2d 385].) In support of the motion, plaintiff filed his own declaration and that of his counsel; numerous declarations in opposition were filed by defendant. ■ "It is for the trial court to determine all conflicts in the testimony or affidavits (*Husar* v. *Husar,* 48 Cal.App.2d 326 [119 P.2d 798] ; *Penland* v. *Goodman,* 44 Cal. App.2d 14 [111 P.2d 913]) and if there is a conflict the determination of the trial court is conclusive on appeal (*Jones* v. *Lindsey,* 114 Cal.App.2d 237 [250 P.2d 153] ; see also *Morgan*

v. *Brothers of the Christian Schools,* 34 Cal.App.2d 14 [92 P.2d 925] ; *Sheffler* v. *Hutchings,* 124 Cal.App. 760 [13 P.2d 527] ; *Taranto* v. *Dick,* 119 Cal.App. 161 [6 P.2d 334] : *Beard* v. *Beard,* 16 Cal.2d 645 [107 P.2d 385] ; *Rackov* v. *Rackov,* 164 Cal.App.2d 566 [330 P.2d 926].)'' (*Luz* v. *Lopes,* 55 Cal.2d 54, 62 [10 Cal.Rptr. 161, 358 P.2d 289] ; *Price* v. *Hibbs,* 225 Cal.App.2d 209, 216 [37 Cal.Rptr. 270].)

"All intendments are in favor of the correctness of the judgment, and where there is a conflict in the evidence or in the inferences to be drawn therefrom, an appellate court is bound to accept as true the evidence and inferences in accord with the finding of the lower court. (*Kooper* v. *King,* 195 Cal.App.2d 621, 625-626 [15 Cal.Rptr. 848] ; *Warren* v. *Warren,* 120 Cal.App.2d 396, 400 [261 P.2d 309] ; *Kapple* v. *Kapple,* 140 Cal.App.2d 787, 788 [295 P.2d 932] ; *Rackov* v. *Rackov,* 164 Cal.App.2d 566, 569 [330 P.2d 926] ; *Romer, O'Connor & Co.* v. *Huffman,* 171 Cal.App.2d 342, 347 [341 P.2d 62].)'' (*Price* v. *Hibbs,* 225 Cal.App.2d 209, 216 [37 Cal.Rptr. 270].)

Proof of Service by Mail alleges under oath that on January 31, 1966, the cross-complaint was served "by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail" addressed to plaintiff at 1404 East California Avenue, Glendale 6, California. Thus, it is presumed that the envelope containing the pleading duly directed and mailed was received in the regular course of the mail. (Code Civ. Proc., § 1963, subd. 24.)[3] It is apparent that the trial judge felt that this presumption had not been disputed by plaintiff's bare denial that he received the cross-complaint, particularly in the light of Mr. McNairy's statement under oath that said cross-complaint addressed to plaintiff "has not been returned by the Post Office to [his] office," evidence on the motion that the cross-complaint was served on plaintiff at the same address as that specified by plaintiff on the first page of his complaint—1404 East California Avenue, Glendale 6, California, on the same day (January 31, 1966) at the same address defendant's answer was mailed to plaintiff, which pleading plaintiff has never denied receiving, and on March 4, 1966, Memorandum of Costs and Disbursements was mailed to plaintiff at the same address (Proof of Service by Mail attached to Memorandum), which plaintiff admits he received, and the further showing of plain-

---

[3]Repealed. Stats. 1965, ch. 299, § 110, p. 1363, operative Jan. 1, 1967.

tiff's long history of litigation, acknowledgment of the amount due defendant, repeated promises to pay while preparing litigation against defendant, silence in the cause until he learned of the levy of execution and absence of any affirmative allegation of substantive merits. These facts were sufficient to justify any finding that proper service had been made and plaintiff in fact did receive the cross-complaint; and the inference that he intentionally ignored the same to forestall payment of his obligation and would have continued to do so had not $7,428.24 of his assets been levied upon. ■■ Facts outside of the record argued by appellant in his reply brief, if true, could and should have been set forth under oath in his declaration or by way of testimony or called to the lower court's attention at the time of the hearing on the motion.

■■ If, having received the cross-complaint, plaintiff, as he claims, did not "understand its significance" or know "of the requirement that [he] file an answer thereto," he should have consulted a lawyer. As said in *Berset* v. *Berset*, 126 Cal.App.2d 684, 687 [272 P.2d 868], "There was no substantial showing of excusable neglect to make an appearance in the action. A defendant who has 'no confidence in his ability to decipher legal jargon' in a summons, or 'if it were read by him,' knows that he should consult a lawyer. If he neglects to do so he cannot plead ignorance of the contents of the summons." Moreover, a motion for relief from a default judgment under section 473 ordinarily will be denied unless it appears that in arranging for his defense a party has exercised such reasonable diligence as a man of ordinary prudence usually bestows upon an important business matter. (*Gore* v. *Witt*, 149 Cal.App.2d 681, 685 [308 P.2d 770].) ■■ At the outset, plaintiff elected to initiate his action in propria persona, and chose to and did proceed without a lawyer; voluntarily representing himself he is not, for that reason, entitled to any more (or less) consideration than a lawyer. Thus, any alleged ignorance of legal matters or failure to properly represent himself can hardly constitute "mistake, inadvertence, surprise or excusable neglect" as those terms are used in section 473. Further, from the evidence before the lower court, the inference is reasonable that plaintiff's plea of ignorance was false. As to the complaint that defense counsel did not contact plaintiff before taking the default and appellant's claim that his appearance in propria persona "should be a special reason why a notice should ethically be given before a default was entered," we know of no requirement

that notice be given when service has been duly made, although it is a courtesy practiced by most lawyers; but in light of the nature of defense counsel's prior dealings with plaintiff (Declaration of Frederic M. McNairy) and other evidence on the motion, any refusal to vacate the default because of this is fully justified.

Appellant doubts that the record "substantiate[s] the amount claimed" by defendant urging that "there should be a trial on the merits." Mrs. Bogert's testimony and defendant's exhibits (books and records) fully established proof of the claim; this and defendant's declarations in opposition to the motion demonstrate the substantial evidence in the record in support of the substantive merits of its cause of action under the cross-complaint. Phillips' declaration detailed the services rendered and the benefit derived therefrom by plaintiff, and reflects plaintiff's approval of the program of selectively placed advertising and his (plaintiff's) subsequent order placing various ads. Mrs. Bogert's declaration asserted that except for minor items, plaintiff acknowledged his obligation to pay for all services rendered and materials furnished him by defendant under the contract; and Mr. McNairy confirmed plaintiff's repeated promise to pay the claim and lack of denial of the amount due (except once he voiced concern over $200 worth of charges). On the other hand, absent in the record is anything more than the bare denial of indebtedness on the part of plaintiff in the form of a proposed answer not made under oath. Nowhere in the record is there any affirmative allegation specifying any basis for plaintiff's denial, or allegation of facts by way of defense, or any alleged special or affirmative defense. While both plaintiff and his counsel advised that in their opinion plaintiff has a meritorious defense, and in both briefs appellant speculates what he "might" be able to assert in defense of the claim, the fact remains that plaintiff at no time revealed to the lower court the nature of his defense. Repeatedly defendant called this and its effect upon the bona fides of plaintiff's motion to the attention of the lower court, first in its points and authorities on May 26, 1966, then on June 3, 1966, but plaintiff submitted nothing on the merits of his position. As stated in *Airline Transport Carriers* v. *Batchelor,* 102 Cal.App.2d 241, 248 [227 P.2d 480], the purpose of section 473, Code of Civil Procedure, is " 'to give to the party complaining in good faith to have a substantial defense to the action an opportunity to present it.' " From plaintiff's failure to assert a

substantial defense, the inference of doubtful good faith in making the motion—made primarily for the release of his assets under attachment—is reasonable.

Asserting that there is no showing that he could not pay any judgment rendered against him or that he contemplated going out of business or moving away, appellant claims that the condition requiring the deposit with the clerk of the cash amount of the judgment (60 percent of which has already been deposited by defendant) imposed by the lower court in its order granting the motion, is unreasonable, unjust and an abuse of discretion. He cites no authority in support of his position.

"The court may, upon such terms as may be just, relieve a party . . . from a judgment . . . taken against him. . . ." (§ 473.) It appears from the statute and various authorities (*Sheffler* v. *Hutchings,* 124 Cal.App. 760 [13 P.2d 527]; *Airline Transport Carriers* v. *Batchelor,* 102 Cal.App.2d 241, [227 P.2d 480]; *Reeves* v. *Hutson,* 144 Cal.App.2d 445 [301 P.2d 264]; *Jacuzzi* v. *Jacuzzi Bros., Inc.,* 243 Cal.App.2d 1 [52 Cal.Rptr. 147]) not only that the trial court has the power to impose a condition of a protective deposit in granting a motion to vacate a default judgment, but the imposition of such a condition is not unreasonable or unjust per se. In *Sheffler* v. *Hutchings* (1932), 124 Cal.App. 760 [13 P.2d 527], the action to recover certain monies turned over by plaintiff to defendant for investment with guaranteed income was based on fraud and deceit. The trial court in granting defendant's motion to set aside default imposed the condition that he file by a specified date a surety bond in a designated amount to guarantee judgment, costs and attorneys' fees. "Appellant complains of the condition imposed by the court in its first order, claiming in his affidavit that it was not only unreasonable but was impossible to perform. But in the absence of denials of the allegations of the complaint, the facts alleged therein must be taken as true, and it appears therefrom that appellant fraudulently and without any consideration therefor transferred title to whatever property in which he may have held an interest to his mother for the purpose of defeating any effort on the part of plaintiff to recover the money which was due her; that being so, it cannot be fairly said that the condition imposed was unreasonable nor that the inference drawn by the trial court that appellant could comply with the same is unsupported." (P. 764.)

Each case must be determined upon its own peculiar facts

and circumstances. (*Watson* v. *San Francisco & Humboldt Bay R.R. Co.*, 41 Cal. 17, 20.) Appellant does not predicate his claim of unreasonableness on impossibility of performance or hardship; and all of the facts point to his ability to comply. Sixty percent of the amount has already been deposited by defendant, leaving only $4,763.99 to be paid. Certain of defendant's declarations, the allegations of which have not been denied, show the substantial profits made by plaintiff as a direct result of defendant's advertising and merchandising services; moreover, particularly in his reply brief, he has repeatedly stated, outside the record, that he is solvent and a responsible businessman doing a large business and his company is a well-established firm. Nor does the record support the contention that the condition is unjust. Its fairness is demonstrated by evidence of substantial expenses paid out of pocket by defendant at considerable sacrifice for advertising on account of plaintiff for which it has not been reimbursed, and the profits generated entirely by defendant's advertising received by plaintiff. It seems obvious that defendant's concern is not over plaintiff's ability to pay any judgment rendered against him, but plaintiff's willingness to satisfy the judgment and the availability of assets for that purpose. Its concern is well founded, for in the absence of explanation or denial, the 17 actions naming plaintiff as a party defendant, many filed by collection agencies or credit companies (some reduced to judgment against him), his failure to advise defendant thereof and his artful tactics in leading it to furnish greater services and materials under the contract for which he refused to pay while pocketing substantial profits earned as a direct result of defendant's services, and plaintiff's repeated promises to defendant's lawyer to pay the claim, which he did not question except in minor detail, all the while preparing litigation against defendant on the same contract, reflect a tendency on plaintiff's part to avoid voluntary payment.

Doubtful is the propriety of raising for the first time on appeal the issue relative to the imposition of the condition in granting the motion. At no time did plaintiff call the matter of the proposed condition to the attention of the lower court by way of declaration or points and authorities prior to the hearing, evidence, testimony, objection or argument at the time of the hearing, or request for reduction of the amount or an extension of time or reconsideration subsequent to the hearing; this in the face of defendant's repeated urging upon

the lower court that in the event it granted the motion such condition be imposed—on May 26, 1966, in defendant's points and authorities, in the numerous declarations filed by defendant, on May 27, 1966, when the motion was first called for hearing (". . . we've got a problem of conditions"), and at the hearing on June 6, 1966, when defendant gave to the court a check for $7,428.64 to consider in connection with the proposed condition. Plaintiff, at the outset aware of defendant's position on the issue, had every opportunity to argue the matter, object or offer evidence on his own behalf. In the face of the proceedings in the court below, his present contention that he "would deny if he had an opportunity to do so" various allegations in defendant's declarations, and arguments based upon facts outside of the record, are not justified.

In any event, if, as shown herein, the facts adduced before the lower court were legally sufficient to warrant an unconditional denial of the motion to vacate default judgment, "the question of the reasonableness of the conditions imposed becomes unimportant." (*Sheffler* v. *Hutchings,* 124 Cal.App. 760, 764 [13 P.2d 527].)

Finally, in his reply brief appellant says that instead of filing his motion under section 473 (wherein he alleged his "mistake, inadvertence, surprise and inexcusable neglect") he should have based his motion on section 473a, then proceeds to argue the merits of such motion. Even if the statute was applicable, we are bound, as are the parties, by the record of what took place in the lower court; it is the record we must review.

The order is affirmed.

Wood, P. J., and Fourt, J., concurred.