[Civ. No. 25038. Second Dist., Div. Three. Oct. 11, 1961.]

LEON L. GRANOFF, Appellant, v. ALBERT J. YACKLE et al., Respondents.

H. L. Sacks for Appellant.

Charles M. Hughes for Respondents.

FORD, J.—This is an appeal from a judgment in favor of the defendants.

In his complaint the plaintiff alleged that he had loaned the defendants sums of money for their use in the operation of their business and that as security therefor the defendants had assigned to him all moneys due or to become due from their customers; that the defendants agreed to forward to the plaintiff such collections within 24 hours after their receipt; that the defendants "proceeded fraudulently and illegally to collect monies and accounts without the knowledge and consent" of the plaintiff; that such collections were in the sum of $4,382.74 and "were used by and for the benefit of the defendants." By their answer the defendants denied such allegations.

At the pretrial conference, the parties submitted a joint statement which was made a part of the order.[1] In that statement it was said that the only matter of fact as to which the parties agreed was the following: "That on and after August 18, 1958, the plaintiff Leon L. Granoff advanced sums of money to the All American Auto Body Shop Inc. and received notes and assignments of accounts signed by Albert J. Yackle and Margaret Yackle as officers of said corporation."[2] It was further stated therein that the "Issues of Fact in dispute are: . . . 2. Was there in fact a corporation? 3. Are the defendants personally bound by the assignments made? 4. Did the defendants have the right to use the amounts they collected on the assigned accounts for their benefit or for the benefit of the corporation?"

The trial court found that the allegations of the complaint to which reference has been made were not true. No specific findings of fact were directed to the issues which, as noted above, were set forth in the joint pretrial statement.

At the trial, the plaintiff Granoff testified that he had discussions with the defendants, Mr. and Mrs. Yackle, about the operation of the business. A letter dated August 19, 1958, was addressed by the plaintiff to "Mr. Al. Yackle, President, All American Auto Body Shop, Inc." In the opening paragraph the plaintiff said that such writing contained what he considered to be the terms of their agreement. Thereafter, the administrative and financial services to be rendered by

---

[1] "The pretrial conference order supersedes the pleadings to the extent of any inconsistencies and controls the subsequent course of the case." (*De Stackelberg* v. *Lamb Transp. Co.*, 168 Cal.App.2d 174, at 180 [335 P.2d 522].)

[2] The articles of incorporation of All American Auto Body Shop, Inc., were filed in the office of the Secretary of State on December 16, 1957. The defendants and their attorney were therein named as the directors.

Mr. Granoff and his fee therefor were stated. The last portion of the document, including the signatures of the defendants placed thereon, was as follows:

"Therefore, we hereby signify our acceptance of this agreement, in behalf of this Corporation by affixing our signatures hereinafter this 19th day of August 1958.

> ALL AMERICAN AUTO BODY SHOP, INC
> Per Margaret Yackle
> _____
> Secretary
>
> ALL AMERICAN AUTO BODY SHOP, INC
> Per Albert J. Yackle Pres."

The corporate seal was affixed next to each of the two signatures. The accounts receivable were thereafter assigned to the plaintiff as security for advances of money he made for use in the operation of the business. Every day Mr. Granoff took possession of the money received in payment of accounts. Where an account was not paid, he attempted to collect it. Mr. Yackle was paid a salary as an employee of All American Auto Body Shop, Inc. The plaintiff explained to Mr. Yackle that it would be desirable that he be secretary-treasurer of the corporation if he was to properly perform his functions as controller. Mr. Yackle then advised him that he was secretary-treasurer. The amount owed to the plaintiff was $4,747.74, including his fee, as of the week immediately preceding the bankruptcy of the corporation. After the agreement of August 19, 1958, "papers between" the plaintiff and the corporation were signed by him in his capacity as secretary-treasurer of the corporation. He filed "a corporation tax return for this body shop" for the fiscal year ending September 30, 1958. The plaintiff also testified that he discovered that Mr. Yackle "took money for a job which was performed for a customer and did not turn the money in."

Mr. Yackle testified that the operation of the business commenced in December 1957. One thousand dollars in cash was invested by him. He said that the board of directors of the corporation held meetings on the second Tuesday of each month. A checking account was opened for the corporation. He stated that he himself received none of the accounts collected and that all of the money was turned over to the plaintiff. He was then shown photostatic copies of two checks. One was a "claim account" check for the amount of $142.60 made by an insurance company in which All American Auto Body

Shop, Inc., and two individuals were payees; it was dated November 4, 1958. Under endorsements appearing to be those of the payees was that of Mr. Yackle. He testified that the check "came into the business" and that he took it down to the office of a Mr. Slate when he "filed bankruptcy" and he gave it to Mr. Slate; the check appeared to have been endorsed by Mr. Slate. He further testified as follows: "Q. Was that a retainer on behalf of the corporation? A. It could be, yes." Mr. Yackle was also shown a check in the amount of $350 made by a credit union in favor of one Gibson. The check, which was dated October 17, 1958, appeared to bear the endorsement of Gibson and the endorsement of Mr. Yackle. Mr. Yackle testified that the check "came through the business" but that he had no recollection of it, although it had his endorsement on it. It appears to have been presented to the bank for payment about October 22, 1958.

Placing his reliance on *Pan Pacific Sash & Door Co.* v. *Greendale Park, Inc.*, 166 Cal.App.2d 652 [333 P.2d 802], and *Riddle* v. *Leuschner*, 51 Cal.2d 574 [335 P.2d 107], the plaintiff contends that the evidence was of such a nature as to require that the corporate entity be disregarded and liability be placed upon the individual defendants with respect to any moneys due the plaintiff. However, throughout most of his relationship with the corporation the plaintiff acted as an officer of the corporation; he dealt with the business as being that of the corporation and not that of the Yackles as individuals. Accordingly, the trial court's refusal to disregard the corporate entity was justified inasmuch as there was substantial support in the evidence for a determination that, in the present action, the plaintiff was estopped to deny that there was an effective corporate existence. (*Wynn* v. *Treasure Co.*, 146 Cal.App.2d 69, 75-76 [303 P.2d 1067]; *Petersen* v. *Cloverdale Egg Farms*, 161 Cal.App.2d 792, 797-799 [327 P.2d 127].)

However, the determination that there was not a basis for the disregard of the corporate entity did not constitute a, complete disposition of the issues presented. As framed by the pretrial order, there was an issue as to whether the defendants had "the right to use the amounts they collected on the assigned accounts for their benefit or for the benefit of the corporation." Mr. Yackle admitted that he endorsed the two checks heretofore mentioned. The only reasonable inferences to be drawn from the present record are that such checks represented payments of accounts receivable which had been

assigned to the plaintiff and that they were wrongfully diverted to the use of Yackle or of the corporation.

The applicable law was clearly stated by Mr. Chief Justice Vanderbilt in *Hirsch* v. *Phily*, 4 N. J. 408 [73 A.2d 173]. In that case, the plaintiff advanced to the Artex company various sums of money for which Artex gave him demand promissory notes, each being in the amount of an advance, and, as collateral security therefor, assignments of accounts receivable. Thereafter Artex was adjudicated to be an insolvent corporation. The plaintiff brought an action against certain officers of Artex based on the ground that they had converted to their own use, or to the use of Artex, funds of the plaintiff. One of the grounds upon which the trial court dismissed the complaint was that there was no proof that any of the moneys collected upon the accounts receivable went to any of the defendants. In reversing the judgment, the Chief Justice said (73 A.2d 173, at p. 177) : "It is well settled by the great weight of authority in this country that the officers of a corporation are personally liable to one whose money or property has been misappropriated or converted by them to the uses of the corporation, although they derived no personal benefit therefrom and acted merely as agents of the corporation. The underlying reason for this rule is that an officer should not be permitted to escape the consequences of his individual wrongdoing by saying that he acted on behalf of a corporation in which he was interested. 152 A.L.R. 703; 3 Fletcher on Corporations, §§ 1140-1142." (See also *Hinkle Iron Co.* v. *Kohn*, 229 N.Y. 179 [128 N.E. 113] ; *Alexander* v. *Coyne*, 143 Ga. 696 [85 S.E. 831, L.R.A. 1916D 1039].)

 In effect, the trial court found that it was not true that Mr. Yackle collected accounts receivable and failed to remit such collections to the plaintiff as the assignee of such accounts receivable. There is no substantial support in the evidence for such finding. Under the applicable law, such a diversion either to the use of the Yackles or for the use of the corporation constituted a breach of the rights of the plaintiff.

The judgment is reversed.

Shinn, P. J., and Vallée, J., concurred.