Filed 5/22/14  Voris v. Lampert CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BRETT VORIS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>GREG LAMPERT,<br><br>    Defendant and Respondent. | B234116<br><br>(Los Angeles County<br>Super. Ct. No. BC408562) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ralph W. Dau, Judge. Affirmed in part, reversed in part and remanded.

Brett Voris, in pro. per.; Call & Jensen, David R. Sugden and Melinda Evans for Plaintiff and Appellant.

Paul Kujawsky for Defendant and Respondent Greg Lampert.

Plaintiff and appellant Brett Voris (Voris) appeals a judgment following a grant of summary judgment in favor of defendant and respondent Greg Lampert (Lampert).

The essential issue presented is whether Voris raised a triable issue of material fact with respect to his alter ego and conversion claims against Lampert.

We conclude Voris failed to raise a triable issue with respect to his alter ego allegations against Lampert. In resisting summary judgment, Voris filed an opposing separate statement which failed to specify the evidence on which he would rely to establish alter ego liability.

However, the viability of Voris's causes of action for conversion does not depend on Lampert's alter ego liability. Lampert may be held individually liable for acts of conversion, without regard to whether the corporate veil may be pierced. Because Lampert failed to show an entitlement to summary adjudication on Voris's conversion claims, the judgment is reversed with respect to the 14th through 20th causes of action and is otherwise affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Pleadings*.

This case arises out of the business relationship between Voris and defendants Lampert and Ryan Bristol (Bristol) (not a party to this appeal). In November 2005, Voris joined with Bristol and Lampert to form Premier Ten Thirty One Capital (PropPoint), a real estate investment company. Voris helped PropPoint with marketing and advertising and was promised an ownership share in the company as compensation for his services. Voris eventually began receiving a salary of $3,000 per month from PropPoint. Voris alleged similar involvement in two other entities, Liquiddium Capital Partners, LLC (Liquiddium) and Sportfolio, Inc. (Sportfolio).

In the fall of 2006, Voris discovered financial improprieties by Bristol and Lampert, who allegedly commingled the funds of PropPoint, Liquiddium, Sportfolio and other companies for their own personal benefit. Voris believed Bristol and Lampert used company funds to pay their personal expenses. Voris also alleged that Bristol and

2

Lampert failed to observe corporate formalities such as keeping minutes of board meetings and notifying shareholders of meetings.

Upon learning of the financial improprieties, Voris confronted Bristol and Lampert, who then retaliated against Voris by criticizing his work performance and accusing him of stealing money from the company. Voris ultimately was terminated in January 2007.

Based on these and additional allegations, Voris filed the operative first amended complaint on July 7, 2009, alleging 24 causes of action, all of which were asserted against Lampert, in addition to other defendants. On September 22, 2009, the trial court sustained Lampert's demurrers to Voris's 8th through 11th and 21st through 24th causes of action with leave to amend. Voris did not amend his pleadings. Thus, following the sustaining of the demurrers, the surviving causes of action against Lampert were Voris's 1st through 7th and 12th through 20th causes of action.

Lampert thereafter moved for summary judgment or summary adjudication.

2. *Moving papers.*

Lampert moved for summary judgment or summary adjudication on the ground no triable issue of fact existed as to Voris's alter ego allegations against him.[1] In order to prevail, Voris would have to show that Lampert, as an individual, operated the corporate defendants as his alter egos by disregarding their corporate forms; it was insufficient, for example, for Voris to show Lampert had an ownership in the defendant corporations.

Citing Voris's factually devoid responses to interrogatories, Lampert asserted Voris had no evidence to prove his claims against Lampert. On September 8, 2010, Lampert served Voris with a set of special interrogatories, asking him to state all facts and identify all documents and witnesses supporting each of his alter ego allegations against Lampert.

---

[1] Each and every cause of action included an alter ego allegation against Lampert, seeking to hold him individually liable to Voris.

Voris's response to each of the interrogatories was as follows: " 'Plaintiff objects to this Interrogatory to the extent it calls for information protected by the attorney-client privilege and/or the attorney work product doctrine. Plaintiff objects to the Interrogatory as overly broad and unduly burdensome as Plaintiff's discovery is ongoing and in light of the fact that defendants have wrongly objected to and failed to respond to Plaintiff's already promulgated discovery. Without waiving such objections, Plaintiff responds as follows: Plaintiff alter ego contentions are supported by documents produced by plaintiff on April 23, 2010 and more specifically the documents enclosed with this response. Plaintiff reserves the right to supplement his response." Thus, Voris's interrogatory responses did not specify any facts, documents or witnesses supporting his alter ego allegations.

 3. *Opposing papers.*

 Voris, who was acting in propria persona, took the position that he had adequately specified the factual basis for his claims against Lampert by simply referring to 87,700 pages of documents on a CD as well hundreds of additional pages of documents that he had produced.

 Voris's responsive separate statement disputed Lampert's assertion that Voris's responses failed to identify any facts or witnesses. Voris's separate statement averred: "The [interrogatory] responses make reference to 87,700 pages of documents [in electronic format on a CD] as well as [a] smaller set of documents [172 pages] produced with the response itself. Moreover, I note that the responses were not verified. My former counsel, Mr. Sobodash, whom I have since discharged, did not show me the responses prior to serving them and I did not read or verify them prior to service, or even know that Mr. Sobodash was serving them. I affirm this under penalty of perjury under the laws of the State of California."

4

Voris further contended that he had provided adequate supplemental responses that identified specific evidence in support of his claims against Lampert, to wit: "I served extensive supplemental responses in December 2010. Each set of supplemental responses is over 1,000 pages long and contains substantially the facts set forth in my declaration opposing summary judgment, as well as many other facts. The supplemental responses identify specific facts and witnesses supporting my claims, and documents by Bates number. I served the supplemental responses along with an additional production of approximately 2000 pages of documents specifically responsive to the interrogatories. I affirm all of this under penalty of perjury under the laws of the State of California."

4. *Trial court's grant of summary judgment in favor of Lampert.*

After hearing the matter, the trial court sustained Lampert's evidentiary objections to Voris's declaration in their entirety, finding that Voris "repeatedly makes statements that lack foundation, amount to an improper legal conclusion, or both."

The trial court noted the surviving allegations in the first amended complaint were "not asserted against Lampert individually. Rather, plaintiff's allegations all state that Lampert was acting on behalf of one of the entity defendants. Because plaintiff's causes of action are based on an alter ego theory of liability, Lampert argues that he is entitled to summary judgment because no triable issue of material fact exists as to whether Lampert acted as an alter ego of the entity defendants. [Citation.]

"To succeed on a theory of alter ego liability, there must be facts showing that: 1) the corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality, or separateness, of such person and corporation has ceased, and 2) an adherence to the fiction of the separate existence of the corporation and the person would, under the particular circumstances, sanction a fraud or promote injustice. [Citations.]

"Lampert states that he made a capital contribution of $100,000 to Premier Ten Thirty One Capital Corp. ('Premier') dba PropPoint but that he never made any profit from his investment. [Citation.] On the contrary, Lampert shared in business losses that he reported on his tax filings. [Citation.] Lampert also states that he never received any

5

salary from Premier. [Citation.] Lampert also relies on the fact that the entity defendants were formed by an attorney with a valid Certificate of Formation and Operating Agreement. [Citation.] Lampert makes similar statements regarding the entity defendants other than PropPoint to establish that he made capital contributions and took his share of relevant profits or losses.

"In addition, Lampert relies on plaintiff's discovery responses in support of his current motion. On September 8, 2010 plaintiff was served with interrogatories asking plaintiff to state the facts supporting his alter ego allegations against Lampert. [Citation.] Plaintiff raised objections to Lampert's interrogatories but stated that the alter ego contentions are supported by documents produced by plaintiff on April 23, 2010 and documents enclosed with plaintiff's response. [Citation.] *The documents plaintiff referred to are 87,700 pages in electronic format that plaintiff produced on April 23, 2010 and 172 pages produced on October 8, 2010.* [Citation.] Of the 172 pages referred to only three documents refer to Lampert. [Citation.] One document states that Lampert made a deposit of $50,000 into Premier. [Citation.] The other documents establish that Premier issued a cashier's check to Lampert for $35,000 and that Lampert received $3,000 in non-employee compensation from Premier in 2006. [Citation.]

"Based on Lampert's declaration and the absence of evidence establishing commingling of funds in plaintiff's discovery responses, Lampert contends that there is no evidence that he acted as an alter ego of the entity defendants and that therefore he is entitled to summary judgment. The court finds that Lampert has met his initial burden of showing that no triable issue of material fact exists. Lampert has clearly stated that there was not a unity of interest between himself and the entity defendants. Furthermore, the evidence plaintiff cites in his interrogatory responses does not establish such a unity of interest. The court accordingly turns to plaintiffs opposition to determine whether or not a triable issue of material fact exists.

"Plaintiff does not introduce any evidence whatsoever establishing that there was a unity of interest between Lampert and any of the entity defendants. One of plaintiff's arguments is that Lampert cannot obtain summary judgment because plaintiff has alleged

6

intentional tort causes of action and breach of contract causes of action against Lampert, which Lampert fails to address through his alter ego arguments. [Citation.] The court is not persuaded that any of plaintiff's remaining causes of action have been asserted directly against Lampert. For example, although plaintiff has alleged a breach of contract cause of action against Lampert, plaintiff unequivocally states that Lampert was acting on behalf of PropPoint when he engaged in the conduct at issue. [Citation.] Similarly, plaintiff's eighteenth cause of action for conversion names Lampert but states that Lampert was acting on behalf of Liquiddium. [Citation.] Because each of plaintiff's causes of action depends on the allegation that Lampert was acting on behalf of an entity defendant, Lampert can properly obtain summary judgment based on his alter ego arguments alone.

"At the February 17, 2011 hearing on this motion, the court continued this motion based on plaintiff's assertion that he would be able to obtain more evidence after the Court ruled on his then-pending discovery motions. Since that hearing, plaintiff has not filed any additional evidence in support of [his] alter-ego claims. On the other hand, Lampert has submitted additional evidence from plaintiff's deposition, which weakens and refutes some of the claims made in plaintiffs declaration supporting this motion. [Citation.] As Lampert had already met its burden on this motion, this additional evidence only strengthens Lampert's argument that plaintiff does not have any evidence to support [his] alter ego claims.

"Because plaintiff has not introduced any evidence to raise a triable issue of material fact, the Court finds that Lampert is entitled to summary judgment. Plaintiff seeks to hold Lampert liable based on an alter ego theory of liability but simply has no evidence to support his theory. By contrast, Lampert has introduced sufficient evidence to meet his burden in connection with this motion. Accordingly, IT IS ORDERED that the motion of defendant Greg Lampert for summary judgment is granted."

On June 30, 2011, Voris filed a timely notice of appeal from the judgment in favor of Lampert.

7

5. *Subsequent proceedings as against the remaining defendants.*

Voris's claims against Sportfolio, Liquiddium and Bristol proceeded to a jury trial. The jury awarded Voris a total of $70,782 in damages as against Sportfolio for breach of contract, services rendered and conversion, and a total of $100,218 in damages as against Liquiddium for breach of contract and conversion, including a punitive damage award of $2,500. Sportfolio and Liquiddium also were ordered to pay attorney fees and costs.

As for Bristol, the individual defendant, he successfully moved for nonsuit. The trial court found Voris had "proven no basis for personal liability on behalf of Mr. Bristol."

On December 9, 2011, Voris filed notice of appeal from the judgment entered in favor of Bristol. Two years later, this court dismissed that appeal for Voris's failure to file an opening brief, and the remittitur issued on January 29, 2014.

## CONTENTIONS

Voris contends the trial court erred in granting summary judgment in favor of Lampert because (1) there were triable issues of material fact as to the alter ego claims; and (2) the corporate shield did not extend to the seven intentional tort causes of action for Lampert's acts of conversion.

## DISCUSSION

1. *Standard of appellate review.*

"We independently review an order granting summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.) We determine whether the court's ruling was correct, not its reasons or rationale. (*Salazar v. Southern Cal. Gas Co.* (1997) 54 Cal.App.4th 1370, 1376.) 'In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment.' (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925.) We review for abuse of discretion any evidentiary ruling made in connection with the motion. (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 122.)" (*Shugart v. Regents of University of California* (2011) 199 Cal.App.4th 499, 504-505.)

8

2. *Voris's failure to specify evidence supporting his alter ego allegations entitled Lampert to summary adjudication on Voris's alter ego claims.*

Voris contends Lampert was not entitled to summary judgment on Voris's alter ego claims because Voris's evidence showed triable issues of fact regarding Lampert's alter ego liability.  Voris's opening brief sets forth a lengthy list of Lampert's alleged misdeeds:  Lampert commingled corporate funds and assets, failed to segregate and diverted funds to noncorporate uses; Lampert treated corporate assets as his own; Lampert conceded he received salary, dividends and interest; Lampert failed to issue stock or provide an accounting; Lampert held himself out as personally liable for the debts of the entities; Lampert failed to maintain minutes and adequate and distinct corporate records; Lampert acted as a boardmember, officer, owner and sole manager with domination and control over the entities; Lampert used the same office location and employed the same employees and attorneys as the companies; Lampert failed to adequately capitalize the entities, maintained them at near-insolvent levels and without assets, and caused two entities to file for Chapter 7 bankruptcy; Lampert used corporate entities as mere shells for his personal interests; Lampert misrepresented the identity of the ownership and concealed management, financial interest, and other personal business activities; Lampert disregarded legal formalities and failed to maintain an arm's length relationships with the entities; Lampert used PropPoint to procure labor, services and assets for Liquiddium, Sportfolio and himself; Lampert diverted assets from the entities to himself; Lampert contracted with employees and vendors with the intent to avoid performance, using the corporate entity as a shield against personal liability; and Lampert created entities for the purpose of evading liability.

This summary of Lampert's alleged misdeeds, which spans 10 pages in the appellant's opening brief, is peppered with references to the voluminous record on appeal.  However, the brief's 10-page summary lacks a single citation to the 60-page separate statement which Voris filed below in opposition to the motion for summary judgment.  (See clerk's transcript, vol. 11, pp. 2547-2605.)  The reason the opening brief on appeal fails to cite to the responsive separate statement is self-evident – Voris's

9

responsive separate statement was bereft of any facts supporting his alter ego allegations. Instead of identifying specific facts, documents or witnesses germane to the alter ego allegations, Voris's opposing separate statement merely directed Lampert and the trial court to 87,700 pages on a CD as well as 172 additional pages of documents.

Thus, Voris's responsive separate statement failed to comply with the dictates of Code of Civil Procedure section 437c, which states in pertinent part at subdivision (b)(3): "The opposition papers shall include a separate statement that responds to each of the material facts contended by the moving party to be undisputed, indicating whether the opposing party agrees or disagrees that those facts are undisputed.  The statement also shall set forth plainly and concisely any other material facts that the opposing party contends are disputed.  *Each material fact contended by the opposing party to be disputed shall be followed by a reference to the supporting evidence.  Failure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion*."

*United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 335 (*Garcin*), held the statutory requirements concerning the presentation of facts and citation of evidence in separate statements are enforced to afford due process to opposing parties and to facilitate the trial court's review of complex motions for summary judgment. *Garcin* embraced the so-called " 'Golden Rule,' " that is, " 'if it is not set forth in the separate statement, it does not exist.' " (*Id*. at p. 337, italics omitted.)

Subsequently, *North Coast Business Park v. Nielsen Construction Co*. (1993) 17 Cal.App.4th 22, 30-32, reasoned the Golden Rule extends to deficiencies in an opposing party's separate statement, and concluded that a party opposing summary judgment must identify pertinent issues and evidence in its separate statement of facts. The court stated: " '[I]t is no answer to say the facts set out in the supporting evidence or memoranda of points and authorities are sufficient. "Such an argument does not aid the trial court at all since it then has to cull through often discursive argument to determine what is admitted, what is contested, and where the evidence on each side of the issue is located." ' [Citations.]"  (*Id*. at p. 30, quoting *Garcin, supra*, 231 Cal.App.3d at p. 335;

10

accord *San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 316 ["where evidence is not referenced, is hidden in voluminous papers, and is not called to the attention of the court at all, a summary judgment should not be reversed on grounds the court should have considered such evidence"].)

Here, Lampert's moving papers below met his initial burden, by making an evidentiary showing and pointing to Voris's lack of evidence to support his alter ego allegations. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849, 854.) The burden then shifted to Voris to specify material facts which would raise a triable issue as to his alter ego claims. (*Id.* at p. 849.) Voris did not meet his burden. Because Voris's responsive separate statement was devoid of any evidentiary support for his alter ego claims, the trial court properly granted summary adjudication thereon.[2]

3. *Viability of Voris's conversion claims against Lampert does not depend on Voris's alter ego allegations; therefore, trial court erred in granting summary adjudication as to Voris's claims against Lampert for conversion.*

Voris contends Lampert's alter ego arguments did not dispose of his seven causes of action against Lampert for conversion, because officers and directors of a corporation may be held personally liable for intentional torts without any need to pierce the corporate veil. The contention has merit.[3]

As stated in *Granoff v. Yackle* (1961) 196 Cal.App.2d 253, " 'It is well settled by the great weight of authority in this country that the officers of a corporation are personally liable to one whose money or property has been misappropriated or converted by them to the uses of the corporation, *although they derived no personal benefit*

---

[2]    Because we conclude Voris failed to present any evidence raising a triable issue with respect to his alter ego allegations, it is unnecessary to address Lampert's alternative argument that Voris, as one who has attempted to benefit from the corporate form of doing business, may be estopped to deny the corporation's separate legal existence. (*Shapoff v. Scull* (1990) 222 Cal.App.3d 1457, 1470.)

[3]    Lampert's moving declaration below indicates he was an officer and director of PropPoint, a manager of Liquiddium, and chairman, president and CEO of Sportflio.

11

*therefrom and acted merely as agents of the corporation.* The underlying reason for this rule is that an officer should not be permitted to escape the consequences of his individual wrongdoing by saying that he acted on behalf of a corporation in which he was interested. [Citations.] (*Id.* at p. 257, italics added; accord, *PMC, Inc. v. Kadisha* (2000) 78 Cal.App.4th 1368, 1381-1382 (*Kadisha*).)"

In *Kadisha,* the court explained: "All persons who are shown to have participated in an intentional tort are liable for the full amount of the damages suffered. [Citations.] This rule applies to intentional torts committed by shareholders and those acting in their official capacities as officers or directors of a corporation, even though the corporation is also liable. (*Vacco Industries, Inc. v. Van Den Berg* (1992) 5 Cal.App.4th 34, 53, fn. 20 [corporate shareholders and officers personally liable for misappropriation of trade secrets]; *Klein v. Oakland Raiders, Ltd*. (1989) 211 Cal.App.3d 67, 76-79 [sole general partner could be personally liable for conspiring to violate the Sherman Act on behalf of limited partnership]; *Golden v. Anderson, supra,* 256 Cal.App.2d at pp. 719-720 [corporate officers conspired to interfere with contractual relationship]; *Joanaco Projects, Inc. v. Nixon & Tierney Construction Co., supra,* 248 Cal.App.2d at pp. 832-833 [corporate stockholders participated in fraud]; *Price v. Hibbs* (1964) 225 Cal.App.2d 209, 222 [corporate officials conspired to induce breach of contract and to defraud]; *Granoff v. Yackle* (1961) 196 Cal.App.2d 253, 256-257 [corporate officers personally liable for misappropriation of another's money or property]; *McClory v. Dodge, supra*, 117 Cal.App. at pp. 152-154 [corporate directors personally liable for misappropriation of plaintiff's stock when they knew or should have known conduct was wrongful]; *Vujacich v. Southern Commercial Co*. (1913) 21 Cal.App. 439, 442-443 [director who knew or had reason to know of corporation's misappropriation of another's money was personally liable]; Civ. Code, § 2343; 3A Fletcher Cyc. of Private Corporations, *supra*, § 1135.)" (*Kadisha, supra*, 78 Cal.App.4th at pp. 1381-1382.)

Lampert argues summary judgment on the conversion counts should be affirmed because, "[w]hile conversion may have occurred, it was the business entities, not Lampert, whom Voris accused." The argument is unavailing. The conversion counts

seek to hold Lampert individually liable for acts he performed on behalf of PropPoint, Liquiddium and Sportfolio. Lampert cannot avoid personal liability for conversion on the ground he allegedly "acted on behalf of a corporation in which he was interested." (*Granoff, supra*, 196 Cal.App.2d at p. 257.) Accordingly, the grant of summary adjudication with respect to the conversion claims, i.e., the 14th through 20th causes of action, must be reversed.

4. *Unnecessary to address Voris's arguments with respect to trial court's evidentiary rulings*.

Voris contends the trial court erred in sustaining Lampert's evidentiary objections. Given the posture of this case, we need not reach the issue.

As discussed, the grant of summary adjudication on the conversion claims must be reversed because Lampert's alter ego arguments do not dispose of his individual liability for conversion. However, Lampert was entitled to partial summary adjudication due to Voris's factually devoid responsive separate statement, which failed to raise a triable issue with respect to Lampert's alter ego liability. Accordingly, it is unnecessary to address Voris's contention the trial court erred in sustaining Lampert's evidentiary objections.

**DISPOSITION**

The judgment is reversed with respect to the 14th through 20th causes of action set forth in the first amended complaint and the matter is remanded for further proceedings thereon; in all other respects the judgment in favor of Lampert is affirmed. The parties shall bear their respective costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

CROSKEY, J.

ALDRICH, J.

14