Filed 6/1/15  Western Union Financial Services v. Alejo CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| WESTERN UNION FINANCIAL SERVICES, INC.,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOHN ALEJO,<br><br>Defendant and Appellant. | B255421<br><br>(Los Angeles County<br>Super. Ct. No. BC489998) |

APPEAL from the judgment of the Superior Court of Los Angeles County. Robert L. Hess, Judge.  Affirmed.

Dominguez Alejo, Aimee E. Dominguez and Gabriela Vanca for Defendant and Appellant.

Michelman & Robinson, Steven K. Camhi, Kevin Warren, and Robin James for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant John Alejo was a corporate officer, director and shareholder in a family-run business known as Liborio Market. He personally guaranteed an agency agreement between Liborio Market and plaintiff and respondent Western Union Financial Services, Inc., doing business as Western Union North America and Integrated Payment Systems, Inc. (Western Union). When Liborio Market failed to remit all funds owed to Western Union under the agency agreement, Western Union pursued its remedies against defendant individually.

The trial court granted summary adjudication in favor of Western Union on its contract causes of action against defendant arising from the personal guaranty agreement. After a bench trial on the remaining tort causes of action, the court found in favor of defendant on the breach of fiduciary duty claim, and in favor of Western Union on the conversion claim. Judgment was entered in Western Union's favor and against defendant in the amount of $1,051,977.51, plus prejudgment interest and costs.

Defendant appeals, conceding his liability on the contract claims in light of his personal guaranty, but challenging the entry of judgment on the conversion claim. Defendant argues the trial court applied an incorrect rule of law, and even assuming the court properly applied the law, there is no substantial evidence he committed an affirmative act on which to base his personal liability in tort.

We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant and several members of his family, including his father, Enrique J. Alejo,[1] operated a chain of grocery stores catering to Hispanic markets, under the name Liborio Market. Defendant was a shareholder, director and corporate officer in the California corporation, Liborio Market, Inc. (hereafter Liborio or "the corporation").

In November 2006, Liborio entered into an agency agreement with Western Union whereby Liborio agreed to offer Western Union's financial products (money orders and

---

[1] Enrique Alejo was also a named defendant below, but is not a party to this appeal.

money transfers) to customers in its grocery stores.  Defendant signed the agency agreement on behalf of Liborio in his capacity as senior vice president.  The agreement pertained to all of the Liborio markets and affiliates.  The agency agreement provided that Liborio would earn a commission for each financial product sold, and the remaining funds were to be held in trust, in a segregated account, for Western Union.  After a deposit of funds, Western Union electronically accessed the account and transferred the funds to the appropriate party depending on the specific financial product purchased.

On the same day the agency agreement between Liborio and Western Union was signed, defendant executed a personal guaranty agreement, individually guaranteeing the payment obligations of Liborio under the agency agreement.

The agency agreement specified that Liborio was to segregate and maintain Western Union funds in a separate trust account.  During the initial "rollout" of Western Union services in the Liborio markets in 2006, Liborio failed to set up a separate trust account for the collection of Western Union funds.  Rather, all monies related to the transactions were deposited into the corporate general account.  Defendant was not personally involved in the rollout of Western Union services in each of the markets, but sometime in 2008 or early 2009, he learned there was no separate account.  He directed that a separate trust account be established, but he took no steps to verify the separate trust account had been set up in accordance with the terms of the agency agreement.  Liborio employed experienced managers, and defendant expected them to comply with his directive.

Liborio sold Western Union's products at all of its market locations.  On average, Liborio collected around $7 million per month on behalf of Western Union.

Sometime in May 2011, Western Union began experiencing problems with electronically obtaining its funds from Liborio.  Western Union discovered, after an audit, that Liborio had not transmitted all funds owed to Western Union and that Liborio owed $1,051,977.51.

Western Union suspended its services in Liborio's markets.  When defendant was advised of the suspension of Western Union's services, he called for a meeting with

3

various management staff, including the vice president of operations and the acting controller. He asked why the back due funds were owed and how that occurred. The management personnel informed defendant that a segregated account had not been established, but that a repayment plan was being worked out with Western Union. Defendant directed the management team to review the corporate records and determine a time frame for repayment.

Liborio and Western Union agreed on a payment plan. Western Union allowed Liborio to resume selling its financial products because defendant and Liborio did not dispute the amount owed, and defendant explained that there had been a "misunderstanding" regarding banking procedures. The back due funds accrued because no separate trust account had ever been set up and Western Union funds were deposited directly into the corporate general account where they were used by the corporation to pay other vendors. In conjunction with the payment plan, a segregated trust account for Western Union funds was finally established sometime in the summer of 2011.

At some point, Liborio failed to comply with the payment plan and Western Union suspended its services again. The Liborio management team reported to defendant that due to the economic downturn and the financial troubles facing most of the markets, full repayment or even significant partial repayment did not appear likely. Western Union asked defendant, pursuant to the personal guaranty, to remit the monies owed by Liborio, but he failed to do so. Defendant had discussions with family members and investigated possibly selling real estate or other assets to repay the debt, but was unable to come up with any funds to pay Western Union.

From 2006 through early 2009, defendant's primary responsibility was to oversee the "administration of the company." However, his role changed after 2009. Between 2009 and 2012, defendant was not involved with the daily business operations of the markets but with trying to sell the corporation. Defendant engaged the services of an investment banker to provide advice regarding the sale of the corporation. Defendant was focused on trying to salvage a family business that had been in operation for some 50 years and employed many family members and friends. While defendant was trying

4

to sell the corporation, the general administration of the markets was handled by the vice president of operations, Pete Perez, who reported "indirectly" to defendant.

Sometime in April 2012, Liborio filed for bankruptcy. With the markets in bankruptcy, defendant returned to work as an attorney.

In August 2012, Western Union filed a complaint stating both contract and tort claims against defendant. The court entered summary adjudication in favor of Western Union on the claim for breach of the written guaranty agreement and for open book account for the total past due amount of $1,051,977.51. The case proceeded to a bench trial on the breach of fiduciary duty and conversion claims. At trial, Western Union did not assert, and did not present evidence, that defendant ever personally handled or personally converted any of Western Union's funds for his own personal use. Defendant conceded the corporation never had any ownership interest in any of the transferred funds, other than the commissions to which it was entitled under the agency agreement. Defendant also did not dispute the funds were owed to Western Union. After hearing testimony, the court asked the parties to include, in their closing briefs, a discussion of the law regarding personal liability of a corporate officer.

Thereafter, the court issued its decision finding in favor of defendant on the breach of fiduciary duty claim, and the request for punitive damages, but finding defendant personally liable for conversion. The court explained that based on the evidence presented, the court was persuaded defendant "knowingly consented to the diversion of money which should have been held in trust for Western Union to pay other creditors, and that he failed to take or direct appropriate action to prevent this." Since defendant testified he was intimately involved during 2009 through 2012 with attempting to sell the corporation, the court reasoned that he "could not be so occupied without a comprehensive understanding of Liborio's business and financial condition, including the details of the financial situation with Western Union."

This appeal followed.

DISCUSSION

Defendant contends there is no basis for his personal liability in tort. Defendant argues the court failed to correctly apply the law of conversion, and there is no substantial evidence supporting his individual liability for the conversion committed by the corporation. Western Union contends defendant is not aggrieved by the court's finding on the conversion claim because defendant does not challenge his liability to Western Union on the contract claims. Western Union argues defendant therefore has no immediate, pecuniary or substantial interest in the outcome of the appeal and the appeal should be dismissed for lack of standing. On the merits, Western Union argues the record substantially supports defendant's liability as a corporate officer for the torts of the corporation.

We conclude defendant has standing, and affirm the judgment.

## 1.     Standing

Although he concedes his liability for breach of the guarantee agreement, defendant contends he has standing to challenge the entry of judgment on the conversion claim because, as an attorney, the civil judgment in tort may impact his ability to practice law and may subject him to discipline. Working as an attorney is how he now earns his living since the family business went into bankruptcy. We agree defendant has standing. (See, e.g., *In re Wright* (1973) 10 Cal.3d 374, 381-382 [the existence of a civil judgment against an attorney for misappropriation of client funds was material additional evidence supporting disbarment of the attorney, who was also convicted of theft from another client]; *Florida Bar v. Draughon* (Fla. 2012) 94 So.3d 566, 571-572 [evidence of civil fraud by an attorney reflected "basic fundamental dishonesty" and supported imposition of one-year of suspension from the practice of law].)

## 2.     The Conversion Claim

Defendant argues that conversion requires an intentional act of dominion over the property of another, but that the court incorrectly applied a "knew or should have known" negligence standard and "general tort" principles to impose personal liability on him for the conversion of Western Union's funds. We are not persuaded.

6

Conversion is an intentional tort. (*Collin v. American Empire Insurance Co.* (1994) 21 Cal.App.4th 787, 812.) The requisite wrongful dominion was established by the unchallenged evidence that Liborio converted in excess of $1 million of Western Union funds by failing to segregate the funds in accordance with the agency agreement, and in failing to remit payment of those back due funds when demanded by Western Union. Defendant was held personally liable for that tortious conduct based on his status as a corporate officer of Liborio; a determination governed by a separate legal standard and not by simply parsing the elements of conversion.

It is well settled "[d]irectors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong or authorize or direct that it be done[.] *They may be liable, under the rules of tort and agency, for tortious acts committed on behalf of the corporation* [citations]." (*United States Liability Ins. Co. v. Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 595, italics added.) "Corporate director or officer status neither immunizes a person from personal liability for tortious conduct nor subjects him or her to vicarious liability for such acts." (*PMC, Inc. v. Kadisha* (2000) 78 Cal.App.4th 1368, 1379 (*PMC*).) " ' "[A]n officer or director will not be liable for torts in which he does not personally participate, of which he has no knowledge, or to which he has not consented. . . . While the corporation itself may be liable for such acts, the individual officer or director will be immune unless he authorizes, directs, or in some meaningful sense actively participates in the wrongful conduct." [Citation.]' [Citation.]" (*Ibid.*) "*A corporate director or officer's participation in tortious conduct may be shown not solely by direct action but also by knowing consent to or approval of unlawful acts*." (*Id.* at p. 1380, italics added.)

In order to hold a corporate officer or director liable in his or her personal capacity, "a plaintiff must first show that the director specifically authorized, directed or participated in the allegedly tortious conduct [citation]; *or that although they specifically knew or reasonably should have known that some hazardous condition or activity under their control could injure plaintiff, they negligently failed to take or order appropriate action to avoid the harm* [citations]. The plaintiff must also allege and prove that an

ordinarily prudent person, knowing what the director knew at that time, would not have acted similarly under the circumstances." (*Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490, 508-509, italics added (*Frances T.*).)

Thus, the court did not apply the wrong legal standard in evaluating defendant's personal liability as a corporate officer for the conversion committed by Liborio.

We also reject defendant's contention the record lacks substantial evidence of his personal liability. Defendant focuses on the fact the evidence showed he did not personally participate in the commingling of Western Union funds in the corporation's general account, or use any of the converted funds for his own personal use. Defendant points out that one of the cases heavily relied upon by both Western Union and the court, *Granoff v. Yackle* (1961) 196 Cal.App.2d 253, involved direct participation by the corporate officer in the conversion. However, as articulated in *Frances T.* and *PMC*, a corporate officer need *not* be shown to have participated directly in the tortious conduct in order to be subject to personal liability. (*Frances T.*, *supra*, 42 Cal.3d at pp. 508-509; *PMC*, *supra*, 78 Cal.App.4th at p. 1380.)

That argument was made and rejected in *PMC*, which involved the misappropriation of trade secrets. The individual defendants in *PMC* were former managers of the plaintiff entity that alleged its trade secrets had been stolen and used to establish the new competing corporation. The defendants were officers and directors of the new corporation and they argued on appeal that they had no personal liability to the plaintiff unless they "personally used trade secrets." (*PMC*, *supra*, 78 Cal.App.4th at pp. 1387-1388.) In rejecting the argument, the court explained that "the decisional authority is to the contrary. Shareholders, officers, and directors of corporations have been held personally liable for intentional torts *when they knew or had reason to know about but failed to put a stop to tortious conduct*." (*Id.* at p. 1387, italics added.)

Here, the evidence demonstrated defendant knew, as early as 2008 or the beginning of 2009, that Liborio had not set up a segregated trust account for the deposit of Western Union funds as required by the agency agreement. He testified he directed that the account be set up, but that he never ensured that it was done, and the funds

8

continued for several more years to be commingled in Liborio's corporate general account where they were used to pay other vendors. Defendant also testified his attentions were completely occupied between 2009 and 2012 with attempting to sell the corporation as its financial status began to decline. We agree with the trial court that defendant could not have discussed the sale of Liborio with the investment banker or with any prospective purchaser without being familiar with Liborio's financial status, including that there were substantial amounts in the general fund owing to Western Union. The evidence supports the trial court's determination that defendant had knowledge of the commingling of Western Union's funds and, by failing to take reasonable action to prevent or correct the situation until after Western Union's audit in 2011, gave approval to that tortious conduct.

## DISPOSITION

The judgment is affirmed. Plaintiff and respondent Western Union Financial Services, Inc., shall recover its costs of appeal.


GRIMES, J.

WE CONCUR:

BIGELOW, P. J.



FLIER, J.


9